



**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
10/22/2020

| | | |
|---|---|---|
| IN RE: | § | |
| **GIANT GRAY, INC.** | § | **CASE NO: 18-31910** |
| Debtor | § | |
| | § | **CHAPTER 7** |
| | § | |
| **LOWELL T. CAGE** | § | |
| Plaintiff | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 20-3127** |
| | § | |
| **CHARLES C DAVIS,** *et al* | § | |
| Defendants | § | |
| | § | |
| **PEPPERWOOD FUND I, LLC,** *et al* | § | **ADVERSARY NO. 20-3129** |
| Defendants | § | |

<u>**MEMORANDUM OPINION**</u>

Lowell T. Cage, the Chapter 7 Trustee, filed two separate but similar complaints seeking to avoid $591,322.68 in transfers from Debtor to Charles C. Davis and to avoid and recover $6,672,950 from Charles C. Davis, Racheal Johnson, Nicholas Davis, and Pepperwood Fund I, LLC, Assed "Ozzie" Kalil, and Michael J. O'Donnell, collectively. The Defendants filed motions to dismiss the respective complaints. For the reasons set forth herein, the Court denies both motions to dismiss and denies Pepperwood Fund I, LLC, Assed "Ozzie" Kalil, and Michael J. O'Donnell's motion for a more definite statement. The Court grants Trustee's request for leave to amend his complaints.

**I.     Procedural History**

On May 12, 2020, Lowell T. Cage, the Chapter 7 Trustee ("*Trustee*"), filed a complaint against Charles C. Davis, Racheal Johnson, and Nicholas Davis (the "*Davis Defendants*").[1]  On June 14, 2020, the Davis Defendants filed a motion to dismiss Trustee's complaint pursuant to Federal Rule Of Civil Procedure 12(b)(6) ("*Davis Defendants' Motion to Dismiss*").[2]  On July 2, 2020, Trustee filed an objection to the motion to dismiss ("*Objection*").[3]  Finally, on August 19, 2020, Trustee filed a supplemental brief in support of his Objection.[4]

On May 12, 2020, Trustee filed a separate complaint against Pepperwood Fund I, LLC, Assed "Ozzie" Kalil, and Michael J. O'Donnell (the "*Pepperwood Defendants*," and together with the Davis Defendants, the "*Defendants*").[5]  On July 8, 2020, the Pepperwood Defendants likewise filed a motion to dismiss the Trustee's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and in the alternative, a motion for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e) ("*Pepperwood Defendants' Motion to Dismiss*").[6]  On August 19, 2020, the Trustee filed an objection to the Pepperwood Defendants' Motion to Dismiss ("*Objection*").[7]  On September 21, 2020, the Court held a combined hearing on both motions to dismiss (the "*Hearing*").  At the conclusion of the Hearing, the Court took both matters under advisement and now issues the instant Memorandum Opinion.

## II.   Conclusions of Law

### A.  Jurisdiction and Venue

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides "the district courts shall have original and exclusive jurisdiction of all cases under title 11."  Section 157

---

[1] 20-3127, ECF No. 1.
[2] 20-3127, ECF No. 5.
[3] 20-3127, ECF No. 6.
[4] 20-3127, ECF No. 16.
[5] 20-3129, ECF No. 1.
[6] 20-3129, ECF No. 6.
[7] 20-3129, ECF No. 12.

allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[8]  This court determines that pursuant to 28 U.S.C. § 157(b)(2)(H), this Adversary Proceeding contains core matters, as it primarily involves proceedings to recover fraudulent conveyances.[9]

Furthermore, this Court may only hear a case in which venue is proper.[10]  Pursuant to 28 U.S.C. § 1409(a), "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending."  Debtor's main Chapter 7 case is presently pending in this Court and therefore, venue of this adversary proceeding is proper.

### B. Constitutional Authority to Enter an Interlocutory Order

This Court must evaluate whether it has constitutional authority to enter an order in this case.  In *Stern,* which involved a core proceeding brought by the debtor under 28 U.S.C. § 157(b)(2)(C), the Supreme Court held that a bankruptcy court "lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim."[11]  However, *Stern* is inapplicable to the instant case. *Stern* concerned final orders entered by the bankruptcy court and here, the Court need only enter an interlocutory order because motions to dismiss pursuant to Rule 12(b)(6), like those filed by the Defendants, are interlocutory.  Entering an interlocutory order does not implicate "the constitutional limitations on the Court's authority to enter final judgments."[12]  Therefore, this Court need not determine whether it has constitutional authority to enter a final order because an

---

[8] 28 U.S.C. § 157(a); *see also* In re: Order of Reference to Bankruptcy Judges, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).
[9] *See* 28 U.S.C. § 157(b)(2)(H).
[10] 28 U.S.C. § 1408.
[11] 564 U.S. at 503.
[12] *West v. WRG Energy Partners LLC (In re Noram Res., Inc.),* 2011 Bankr. LEXIS 5183, at *3 (Bankr. S.D. Tex. Dec. 30, 2011).

interlocutory order is all that is required by the instant case.[13]

### III.    Analysis

### A. Whether Trustee's Request for Leave to File Amended Complaints Should be Granted

This Court must first decide whether Trustee's motion for leave to file amended complaints should be permitted.  In his replies to the Defendants' Motions, Trustee requested leave, if necessary, to specifically identify which unsecured creditors with allowable claims may be able to avoid a fraudulent transfer under applicable state law, pursuant to § 544(b)(1).[14] Trustee reiterated this request at the Hearing.  Additionally, Trustee requested leave in his reply to the Pepperwood Defendants' Motion to Dismiss to "replead more specific allegations" regarding Defendants Kalil and O'Donnell's status as mediate transferees under § 550. [15]  As discussed *infra*, the Court finds that Trustee's current pleadings regarding the identification of unsecured creditors pursuant to § 544(b)(1) are insufficient and must be amended as to Count 1 for all Defendants and Count 3 for Defendant Charles Davis.  Conversely, the Court finds below that Trustee pled sufficient facts as to his § 550 claim against Defendants Kalil and O'Donnell.

Trustee should be granted leave so that he can remedy the deficiencies alleged by the Defendants.  Because there is no valid justification to deny Trustee leave to amend, Trustee's request is granted for the reasons hereunder.  Trustee's request relies upon Federal Rule of Civil Procedure 15, made applicable here through Federal Rule of Bankruptcy Procedure 7015.  Rule 15 governs motions to amend a complaint made before trial and provides that "[t]he court should

---

[13] *See Shelton v. Aguirre & Patterson, Inc. (In re Shelton)*, 2014 Bankr. LEXIS 1722, at *11 (Bankr. S.D. Tex. Apr. 18, 2014) (explaining that a bankruptcy court may not dismiss a cause of action with prejudice because that would constitute adjudication on the merits and thus a final order dismissing the plaintiff's suit. However, the court continued, a court may issue an interlocutory order even where it does not have authority to enter a final order.)

[14] 20-3127, ECF No. 6 at 8; 20-3129 ECF No. 12 at 9.

[15] 20-3129, ECF No. 12 at 16.

freely give leave when justice so requires."[16]   The Fifth Circuit observed that "Rule 15(a) 'evinces a bias in favor of granting leave to amend.'"[17]

Under Rule 15(a)(1), Trustee had 21 days after the Defendants filed their Rule 12(b)(6) Motions to amend his complaints without consent from the Defendants or a grant of leave from this Court.[18]   Because that deadline passed, Trustee requests leave and "leave shall be freely given [if] justice so requires."[19]   Absent a formal motion for leave, a requesting party must set forth with particularity the grounds for the amendment and the relief sought."[20]   This requires a movant to give the court some notice of the nature of his proposed amendments.[21]   Although no strict guidelines exist as to what constitutes a sufficient request for leave to amend, it is clear that some specificity is required.[22]   Here, Trustee provided adequate notice of his proposed amendment regarding the unsecured creditors with allowable claims who could bring avoidance actions under the applicable state law.   In his Objections, Trustee identifies 53 creditors with claims totaling $6,676,262.33 based upon unpaid promissory notes Debtor executed before issuance of the Series A Stock to Ray Davis and the transfers to Charles Davis.[23]

"If proper notice was given, the court may consider such factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment when

---

[16] FED. R. CIV. P. 15(a)(2).
[17] *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 566 (5th Cir. 2002) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)).
[18] FED. R. CIV. P. 15(a)(1).
[19] FED R. CIV. P. 15(a)(2).
[20] *United States ex. rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 330–31 (5th Cir. 2003) (quoting *United States ex re. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 386–87 (5th Cir. 2003)).
[21] *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2016).
[22] *Thomas*, 832 F.3d at 590.
[23] 20-3127, ECF No. 6 at 7–8; 20-3129, ECF No. 12 at 8–9.

deciding whether to grant leave to amend."[24]   Trustee first requested leave, if necessary, in his reply to the Defendants' Motions. Trustee filed his Objection eighteen days after the Davis Defendants filed their Motion to Dismiss and filed his Objection to the Pepperwood Defendants' Motion forty-two days after they filed.  Neither constitutes undue delay. [25]

Moreover, Trustee's amendments would cure the deficiencies complained of by the Defendants and would not include any new claims or parties, thereby dispelling any notion that this amendment is in bad faith or prejudicial to the Defendants.   Additionally, Trustee has not previously sought amendments to cure deficiencies—this would constitute Trustee's first amended complaint.  Lastly, the amended complaints would not be futile.

To determine whether the amendment would be futile, courts apply "the same standard of legal sufficiency as applies under Rule 12(b)(6)."[26]   In order to state a claim under Rule 12(b)(6), a plaintiff must meet Rule 8(a)(2)'s pleading requirements. Rule 8(a)(2) requires a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief."  In *Ashcroft v. Iqbal*, the Supreme Court held that Rule 8(a)(2) requires that "well-pleaded facts . . . permit the court to infer more than a mere possibility of misconduct."[27]   Trustee's proposed amendments indicate who holds an allowable claim and could have brought an action under the applicable state law and provides the bankruptcy claim numbers for those 53 unsecured creditors.[28]  Therefore, Trustee's request for leave to file an amended complaint is granted.[29]

**B.  Standard of Review for Motions to Dismiss under Federal Rule of Civil Procedure 12(b)(6).**

---

[24] *Southmark Corp. v. Schulte Roth & Zabel (In re Southmark Corp.)*, 88 F.3d 311, 314 (5th Cir. 1996) (citations omitted).

[25] *See, e.g.*, *Thomas*, 832 F.3d at 588 (allowing the amendment of a complaint after the filing of a motion for summary judgment).

[26] *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000) (quotation omitted).

[27] 556 U.S. 662, 679 (2009).

[28] 20-3127, ECF No. 6 at 7–8 n.1; 20-3129, ECF No. 12 at 8–9.

[29] 20-3127, ECF No. 6; 20-3129, ECF No. 12.

Under Rule 12(b)(6), this Court may dismiss a complaint for "failure to state a claim upon which relief can be granted."[30]  However, motions to dismiss are disfavored and therefore, rarely granted.[31]  This Court reviews motions under Rule 12(b)(6) by "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs."[32]  Although this Court "will not strain to find inferences favorable to the plaintiff,"[33] the facts need only be sufficient "for an inference to be drawn that the elements of the claim exist."[34]

To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must meet Federal Rule of Civil Procedure 8(a)(2)'s pleading requirements.  Rule 8(a)(2) requires a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief."[35]  In *Ashcroft v. Iqbal*, the Supreme Court held that Rule 8(a)(2) requires that "the well-pleaded facts . . . permit the court to infer more than the mere possibility of misconduct."[36]  "Only a complaint that states a plausible claim for relief survives a motion to dismiss."[37]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[38]  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[39]

---

[30] FED. R. CIV. P. 12(b)(6).

[31] *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005).

[32] *Stokes v. Gann*, 498 F. 3d 483, 484 (5th Cir. 2007) (per curiam).

[33]  *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (internal quotations omitted).

[34]*Harris v. Fidelity Nat'l Info. Serv* (*In re Harris*), Nos. 03-44826, 08-3014, 2008 Bankr. LEXIS 1072 at *41 (Bankr. S.D. Tex. Apr. 4, 2008) (citing *Walker v. South Cent. Bell Tel. Co.*, 904 F2d 275, 277 (5th Cir. 1990)).

[35] FED. R. CIV. P. 8(a).

[36] 556 U.S. 662, 679, (2009) (quoting Rule 8(a)(2)).

[37] *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

[38] *Id.* at 678.  (citing *Twombly,* 550 U.S. at 555).

[39] *Id.*  (quoting *Twombly*, 550 U.S. at 556). *See also Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) ("A complaint does not need detailed factual allegations, but must provide the plaintiff's grounds for entitlement to relief – including factual allegations that when assumed to be true raise a right to relief above the speculative level.") (citations omitted).

Fraud claims must, in addition, meet Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements. Under Rule 9(b), fraud claims must be alleged with particularity concerning the circumstances of the fraud.[40]

## C. Trustee's Complaints

In his companion complaints, Trustee alleges that in November 2005, Ray Davis founded Behavioral Recognition Systems, Inc. n/k/a Giant Gray, Inc. ("*Debtor*"), a software company that developed and marketed proprietary artificial intelligence software, called AISight, to analyze video surveillance data.[41]  Debtor was a privately held company, largely owned by third-party investor shareholders, and raised capital primarily through equity from private investors.[42] Through 2015, Debtor received more than $115 million from private investors.[43]  Also as of 2015, there were in excess of 70 million shares of common stock issued and owned by such investors.[44]  Ray Davis, the Chairman and Chief Executive Officer, owned 1,530,000 shares of common stock in Debtor, or less than three percent.[45]  Trustee alleges that beginning in 2012 and continuing until 2015, Ray Davis fraudulently transferred over $11.5 million from Debtor to personal bank accounts through fictitious entities created and controlled by Ray Davis.[46]

On December 7, 2017, Ray Davis was indicted by the United States Department of Justice.[47]  On December 14, 2017, the Securities and Exchange Commission ("*SEC*") filed a civil action against Ray Davis and Debtor, as defendants, and Blackstone Group, Inc., Afcon

---

[40] FED. R. CIV. P. 9(b); *see Oppenheimer v. Prudential Sec. Inc.*, 94 F.3d 189, 195 (5th Cir. 1996) (upholding district court's dismissal of fraud claims where the plaintiff failed to allege when an allegedly fraudulent sales charge was incurred or the extent of her damages); *Red Rock Invs. v. JAFCO Ltd.*, 1996 U.S. App. LEXIS 42602, at *9 (5th Cir. Feb. 16, 1996) (holding that the plaintiff's allegations did not satisfy Rule 9(b) where they failed to allege the time, place, or content of any misrepresentations).
[41] 20-3127, ECF No. 1 at 3; 20-3129, ECF No. 1 at 3.
[42] 20-3127, ECF No. 1 at 3–4; 20-3129, ECF No. 1 at 3–4.
[43] 20-3127, ECF No. 1 at 3; 20-3129, ECF No. 1 at 3.
[44] 20-3127, ECF No. 1 at 4; 20-3129, ECF No. 1 at 4.
[45] 20-3127, ECF No. 1 at 4; 20-3129, ECF No. 1 at 4.
[46] 20-3127, ECF No. 1 at 3; 20-3129, ECF No. 1 at 3.
[47] 20-3127, ECF No. 1 at 3; 20-3129, ECF No. 1 at 3.

Communications, Inc. and Debra Davis as relief defendants.[48]   Therein, the SEC asserted claims against Debtor for violations of applicable securities law, and in addition, sought to disgorge any funds from Blackstone Group, Inc., Afcon Communications, Inc., and Debra Davis that were proceeds or traceable to the proceeds of the unlawful activities of Ray Davis and Debtor.[49]

On April 13, 2018, an involuntary Chapter 7 bankruptcy petition was filed against Debtor in Case No. 18-31910, in the United States Bankruptcy Court for the Southern District of Texas, Houston Division.[50]   An Order for Relief was entered on May 15, 2018, and Lowell T. Cage was appointed as Trustee.[51]   Subsequent to Trustee's appointment, Ray Davis died on July 7, 2018.[52]

Trustee alleges that by early 2015, Debtor's financial picture was woeful.[53]   Investors were growing restless of repeated unkept promises of a return on their investment as Debtor struggled to turn its concept into a commercially viable product.[54]   Ray Davis's health also began to deteriorate, and he needed an exit strategy.[55]   Trustee contends that Ray Davis reached out to an old confidant and trusted ally in Assed "Ozzie" Kalil ("*Kalil*") to help him find a solution and Kalil introduced Ray Davis to Michael J. O'Donnell ("*O'Donnell*").[56]   Sensing the opportunity, Kalil and O'Donnell agreed to help Ray Davis find a buyer for Debtor.[57]

Trustee contends that getting shareholder approval of a sale would be difficult and would not produce the return desired by Ray Davis because he owned less than three percent of the outstanding shares of common stock at the time.[58]   Trustee alleges that Ray Davis's solution was

---

[48] 20-3127, ECF No. 1 at 3; 20-3129, ECF No. 1 at 3.
[49] 20-3127, ECF No. 1 at 3; 20-3129, ECF No. 1 at 3–4.
[50] 20-3127, ECF No. 1 at 3; 20-3129, ECF No. 1 at 4.
[51] 20-3127, ECF No. 1 at 3; 20-3129, ECF No. 1 at 4.
[52] 20-3127, ECF No. 1 at 4; 20-3129, ECF No. 1 at 4.
[53] 20-3127, ECF No. 1 at 4; 20-3129, ECF No. 1 at 4.
[54] 20-3127, ECF No. 1 at 4; 20-3129, ECF No. 1 at 4.
[55] 20-3127, ECF No. 1 at 4; 20-3129, ECF No. 1 at 4.
[56] 20-3127, ECF No. 1 at 4; 20-3129, ECF No. 1 at 4.
[57] 20-3127, ECF No. 1 at 4; 20-3129, ECF No. 1 at 4.
[58] 20-3127, ECF No. 1 at 4; 20-3129, ECF No. 1 at 4.

to cause Debtor's Board of Directors, which consisted solely of Ray Davis and John Frazzini, to issue a Unanimous Written Consent to Action Without Meeting of the Board of Directors of Behavioral Recognition Systems, Inc. ("*Resolution*"), authorizing Debtor to issue 1,000 shares of Series A Convertible Preferred stock ("*Series A Stock*") to Ray Davis as the sole recipient.[59]  Ray Davis demanded John Frazzini sign the Resolution and was threatening to shut Debtor down or to allow Debtor to fail if the Series A Stock was not issued to him so that he could monetize a sale of Debtor or its controlling shares.[60]  The Resolution, claims Trustee, also provided that the Series A Stock would "enable the holder thereof to vote 67% of the total vote on all shareholder matters," effectively giving Ray Davis full control of the company.[61]  Trustee alleges that the issuance of the Series A Stock to Ray Davis was never put to a shareholder vote and was otherwise concealed from Debtor's other shareholders.[62]

The consideration for the issuance of the Series A Stock to Ray Davis, Trustee alleges, was Ray Davis's consent to the terms of an Employment Agreement dated April 13, 2015, with a retroactive effective date of January 1, 2014.[63]  However, Trustee maintains, the Employment Agreement was not reasonably equivalent to the value of the Series A Stock[64] because it merely installed Ray Davis as chairman of the Board of Directors, and required no duties of him other than duties typically required of a board chairman.[65]  The Employment Agreement provided that Ray Davis would be compensated at $300,000, retroactively, for 2014 and would be compensated at $469,000 from 2015 through 2020.[66]  He was also given other compensation in the form of stock options, a bonus of up to 100 percent of his salary, and 60 days per year of paid

---

[59] 20-3127, ECF No. 1 at 4; 20-3129, ECF No. 1 at 4–5.
[60] 20-3127, ECF No. 1 at 5; 20-3129, ECF No. 1 at 5.
[61] 20-3127, ECF No. 1 at 4; 20-3129, ECF No. 1 at 5.
[62] 20-3127, ECF No. 1 at 5; 20-3129, ECF No. 1 at 5.
[63] 20-3127, ECF No. 1 at 5; 20-3129, ECF No. 1 at 5.
[64] 20-3127, ECF No. 1 at 8; 20-3129, ECF No. 1 at 8.
[65] 20-3127, ECF No. 1 at 5; 20-3129, ECF No. 1 at 5.
[66] 20-3127, ECF No. 1 at 5; 20-3129, ECF No. 1 at 5.

time off.[67]  This compensation was in addition to the yearly salary of $350,000 he received as CEO of Debtor.[68]

Trustee alleges that after the issuance of the Series A Stock, Ray Davis quickly moved to monetize the stock through a transaction with Kalil and O'Donnell, who formed Pepperwood Fund II, LP ("*Pepperwood II*") as a vehicle to raise cash from investors to acquire the Series A Stock from Ray Davis.[69]  Thereafter, on or about July 28, 2015, Ray Davis and his wife, Debra Davis, entered into the Amended and Restated Agreement for Purchase and Sale of Stock Interest in Behavioral Recognition Systems, Inc. ("*Sale Agreement*") that provided for the sale of the Series A Stock and Ray Davis's common stock to Pepperwood II in exchange for $15 million.[70]  Following the sale, Ray Davis received the following funds which were deposited into Ray Davis's personal bank account.

| Date | Amount |
| --- | --- |
| September 18, 2015 | $1,999,950 |
| December 16, 2015 | $3,675,000 |
| December 31, 2015 | $325,000 |
| April 4, 2016 | $3,999,950 |
| **TOTAL** | $9,999,900[71] |

Prior to the stock sale, Ray Davis and Debra Davis entered into a Referral Agent Agreement with Pepperwood Fund I, LLC ("*Pepperwood I*"), which provided that Pepperwood I would receive $5 million from the sale of Debtor's shares that were owned by Ray Davis.[72]  In conjunction with the Sale Agreement, Ray Davis and Debra Davis, Pepperwood I, and the McGeary Law Firm, P.C., signed an Amended and Restated Escrow Agreement setting forth the

---

[67] 20-3127, ECF No. 1 at 5; 20-3129, ECF No. 1 at 5–6.
[68] 20-3127, ECF No. 1 at 5; 20-3129, ECF No. 1 at 6.
[69] 20-3127, ECF No. 1 at 5; 20-3129, ECF No. 1 at 6.
[70] 20-3127, ECF No. 1 at 5–6; 20-3129, ECF No. 1 at 6.
[71] 20-3127, ECF No. 1 at 5–6.
[72] 20-3129, ECF No. 1 at 6.

terms by which the shares would be transferred and funds from the sale of the shares would be paid to Ray Davis and to Pepperwood I.[73]  Following the Series A Stock sale, Pepperwood I received funds as follows ("*Pepperwood I Transfers*"):

| Date | Amount |
|------|--------|
| September 18, 2015 | $1,000,000 |
| December 16, 2015 | $1,825,000 |
| December 31, 2015 | $172,150 |
| April 4, 2016 | $1,999,800 |
| **TOTAL** | $4,996,950[74] |

Trustee, on information and belief, asserts that after receipt of the monetized funds from the fraudulently transferred Series A Stock, Pepperwood I distributed the funds to Kalil and O'Donnell.[75]

Separately from the transactions with the Pepperwood Defendants, Trustee contends that Ray Davis made a large number of transfers to his children (collectively, "*Davis Defendants' Transfers*"), after Ray Davis received the monetized funds from the fraudulently transferred Series A Stock.[76]  Trustee further alleges that many of the Davis Defendants' Transfers were made on the same day or within days of receipt of the transfers from Pepperwood II to Ray Davis..[77]

Charles Davis received the following cash transfers from Ray Davis on the dates and in the amounts specified:

| Date | Amount | Method | |
|------|--------|--------|--|
| October 1, 2015 | $50,000 | Check | |
| November 10, 2015 | $25,000 | Wire | |
| November 18, 2015 | $75,000 | Wire | |
| December 16, 2015 | $150,000 | Check | Same date Ray Davis received $3,675,000 |
| February 24, 2016 | $2,000 | Wire | |

---

[73] *Id.*
[74] *Id.*
[75] *Id.* at 7.
[76] 20-3127, ECF No. 1 at 6.
[77] *Id.*

| March 2, 2016 | $70,000 | Wire | |
| March 31, 2016 | $40,000 | Wire | |
| April 6, 2016 | $53,000 | Check | Two days after Ray Davis received $3,999,950 |
| April 18, 2016 | $75,000 | Wire | |
| May 17, 2016 | $101,000 | Wire | |
| May 18, 2016 | $60,000 | Wire | |
| **TOTAL** | $701,000[78] | | |

Racheal Johnson received the following cash transfers from Ray Davis on the dates and in the amounts specified:

| Date | Amount | Method | |
| --- | --- | --- | --- |
| September 21, 2015 | $50,000 | Check | Three days after Ray Davis received $1,999,950 |
| December 21, 2016 | $150,000 | Check | Five days after Ray Davis received $3,675,000 |
| April 7, 2016 | $125,000 | Check | Three days after Ray Davis received $3,999,950 |
| May 6, 2016 | $425,000 | Wire | |
| May 9, 2016 | $25,000 | Wire | |
| **TOTAL** | $775,000[79] | | |

Nicholas Davis received the following cash transfers from Ray Davis on the dates and in the amounts specified:

| Date | Amount | Method | |
| --- | --- | --- | --- |
| September 21, 2015 | $50,000 | Check | Three days after Ray Davis received $1,999,950 |
| December 18, 2015 | $150,000 | Check | Five days after Ray Davis received $3,675,000 |
| **TOTAL** | $200,000[80] | | |

Combining the amounts received by the Pepperwood Defendants and the Davis Defendants, the Trustee seeks to avoid and recover a total of $6,672,950 in alleged subsequent transfers from the allegedly fraudulent transfer of the Series A Stock and subsequent sale. The Court will next turn its attention to the causes of action pled by Trustee in each complaint and the respective Motions to Dismiss.

### D.  Trustee's Causes of Action and the Defendants' Motions to Dismiss

---

[78] *Id.*
[79] *Id.* at 6–7.
[80] *Id.* at 7.

1.  **Whether Trustee Lacks Standing to State a Claim to Avoid the Transfers Under Applicable State Law Pursuant to § 544(b)(1).**

As a preliminary matter and under § 544(b)(1), Trustee must demonstrate the existence of an unsecured creditor that holds an allowable claim and who could avoid the transfers under state law.[81] And while Trustee need not identify the creditor(s) by name, he must establish that there is at least one unsecured creditor who meets those criteria.[82]

In his companion complaints, Trustee alleges that the transfers are avoidable under Texas Uniform Fraudulent Transfer Act ("*TUFTA*") sections 24.005(a)(1), 24.005(a)(2), and 24.006(a), but Trustee merely recites those statutes and does not list a single unsecured creditor who meets the required criteria.[83]  Instead, Trustee alleges that at the time of the issuance of the Series A Stock, there were millions of dollars owed to noteholders that Debtor could not pay,[84] and in his Objections, Trustee alleges more specifically that there are 53 creditors with claims totaling $6,776,262.33, based on promissory notes that were issued before the allegedly fraudulent transfers.[85]  Trustee provides the bankruptcy claim numbers for each of those creditors in his Objection to the Davis Defendants' Motion to Dismiss, but not in his Objection to the Pepperwood Defendants' Motion to Dismiss.[86]  Additionally, Trustee requests leave to file an amended complaint to specifically identify creditors.[87]  The Court finds that Trustee has not met his pleading burden because his complaints do not demonstrate the existence of an unsecured

---

[81] *See Katchadurian v. NGP Energy Capital Mgmt., LLC (In re Northstar Offshore Grp., LLC)*, 616 B.R. 695, 728 (Bankr. S.D. Tex. 2020) (explaining that it is sufficient for the Trustee to demonstrate the existence of one creditor, and not multiple, that could have brought a claim).

[82] *Faulkner v. Kornman (In re Heritage Org., L.L.C.)*, 2008 Bankr. LEXIS 3230, at *13–14 (Bankr. N.D. Tex. 2008); *see also In re Northstar Offshore Grp., LLC*, 616 B.R. at 725, 728 (finding that where the trustee listed certain unsecured creditors and alleged that their claims arose before or within a reasonable amount of time of the fraudulent transfer, as required by the applicable state law, the only outstanding issue was whether the claims indeed arose "within a reasonable amount of time," a fact specific issue not ripe for decision at the motion to dismiss stage).

[83] 20-3127, ECF No. 1 at 7–10; 20-3129, ECF No. 1 at 7–9.

[84] 20-3127, ECF No. 1 at 9; 20-3129, ECF No. 1 at 9.

[85] 20-3127, ECF No. 6 at 7–8; 20-3129, ECF No. 12 at 9.

[86] 20-3127, ECF No. 6 at 7–8; 20-3129, ECF No. 12 at 9.

[87] 20-3127, ECF No. 6 at 8; 20-3129, ECF No. 12 at 9.

creditor that holds an allowable claim and who could have avoided the transfers under state law. Therefore, as the Court found above, Trustee's request for leave to file amended complaints to specifically identify such creditors is granted.

### 2. Trustee's First Cause of Action: Recovery of Immediate or Mediate Transfers Under § 550 as to all Defendants.

To sustain a recovery action against the Defendants, Trustee must prove each of the elements of 11 U.S.C. § 550. Defendants attack each of these elements in their respective Motions to Dismiss. The Court will consider each one in turn. Section 550 states:

> (a)  . . . to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
>> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
>> (2) any immediate or mediate transferee of such initial transferee.[88]

### a. Whether § 550 requires actual avoidance of an initial transfer before recovery is sought from immediate or mediate transferees.

The Defendants contend that Trustee must first avoid the initial transfer of the Series A Stock from Debtor to Ray Davis prior to seeking recovery from the Defendants because the plain language of § 550 says "to the extent a transfer is *avoided*," not "to the extent a transfer is *avoidable*."[89] The Pepperwood Defendants also compare the definition of avoid ("[t]o render void") with avoidable or voidable ("an adjective that describes a transaction that can be avoided

---

[88] 11 U.S.C. § 550(a)(1)–(2).
[89] 20-3127, ECF No. 5 at 3–5 (citing *Enron Corp. v. Int'l Fin. Corp (In re Enron Corp.)*, 343 B.R. 75, 80 (Bankr. S.D.N.Y. 2006); *In re Richmond Produce Co., Inc.*, 195 B.R. 455 (N.D. Cal. 1996); *Durkin v. Shields (In re Imperial Corp. of Am.)*, 1997 U.S. Dist. LEXIS 20945, *13–*14 (S.D. Cal. Aug. 20, 1997); *Advanced Telecomm. Network, Inc. v. Allen (In re Advanced Telecomm. Network, Inc.)*, 321 B.R. 308, 328 (Bankr. M.D. Fla. 2005)); 20-3129, ECF No. 6 at 17–19 (citing *Cullen Ctr. Bank & Tr. v. Hensley (In re Criswell)*, 1997 U.S. App. LEXIS 12784, at *25 (5th Cir. Jan. 9, 1997); *Schmidt v Meridian Capital Found. (In re Black Elk Energy Offshore Operations, LLC)*, 2019 Bankr. LEXIS 2561, at *26 (Bankr. S.D. Tex. Aug. 16, 2019); *Weinman v. Simons (In re Slack–Horner Foundries Co.)*, 971 F.2d 577, 580 (10th Cir. 1992); *Contemp. Indus. Corp. v. Frost (In re Contemp. Indus. Corp.)*, 2001 WL 34630639, at *8 (Bankr. D. Neb. Feb. 14, 2001); *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*, 379 B.R. 5, 19 (Bankr. E.D.N.Y. 2007); *Brandt v. Hicks, Muse & Co., Inc. (In re Healthco Int'l)*, 195 B.R. 971, 981-82 (Bankr. D. Mass. 1996)).

but that is '[v]alid until annulled'"), in arguing that the terms have distinct meanings and are not synonymous.[90]   The Defendants acknowledged at the Hearing that avoidance does not require court adjudication on the matter, and could instead be accomplished by settlement, but neither occurred in the instant case.   Therefore, they conclude, because Trustee pled that the transfer is avoidable but did not seek to avoid the transfer as to Ray Davis before this recovery action and has not asked this Court to actually avoid that transfer now, the first element of § 550 has not been met.[91]

        In his Objections, Trustee counters that the initial transfer from Ray Davis need not be avoided prior to seeking recovery from any immediate or mediate transferees[92] and says that the sources cited by the Davis Defendants support Trustee's contention that the initial transfer need not actually be avoided before he can recover from the Defendants.[93]   Trustee notes that in *In re Enron*, the bankruptcy court was reversed by the district court because the district court found that "the plaintiff need only make 'a declaration of avoidance against the initial transferee' if the circumstances show that no recovery against the [mediate] transferees can be accomplished otherwise."[94]   Trustee argues that no recovery could be made against mediate transferees in this case if the initial transfer had to be avoided because the initial transferee, Ray Davis, is deceased.[95]   However, Trustee continues, the majority of cases "require no actual avoidance of

---

[90] 20-3129, ECF No. 6 at 18 (citing BLACK'S LAW DICTIONARY (11th ed. 2019).
[91] 20-3127, ECF No. 5 at 4; 20-3129, ECF No. 6 at 18–19.   This Court notes that in the Summary of Complaint portions of Trustee's complaints, he explicitly seeks to avoid and recover the transfers made to the Defendants pursuant to §§ 544 and 550. See 20-3127, ECF No. 1 at 2; 20-3129, ECF No. 1 at 3.   The Defendants' argument, however, is that Trustee did not seek to avoid the transfers as to Ray Davis and has not joined his estate in this action. Trustee, however, is not required to do so to recover from the Defendants as discussed by the Court in this Memorandum Opinion.
[92] 20-3127, ECF No. 6 at 2–4; 20-3129, ECF No. 12 at 9–11.
[93] 20-3127, ECF No. 6 at 3.
[94] *Id.*
[95] *Id.*

the initial transfer and no showing that the initial transfer cannot practicably be avoided."[96] Trustee points to *Richmond*, cited by the Davis Defendants, as support for his position that he need only prove that the initial transfer is avoidable before seeking recovery.[97]

Further, Trustee argues that the sources cited by the Pepperwood Defendants either reflect the minority view, that a transfer must be avoided before recovery ensues, or that those sources actually favor Trustee's view.[98]   First, Trustee cites *In re Brooke Corporation*, which criticizes the holding in *In re Slack-Horner Foundries Company* and finds that the "better view" of § 550 is that of COLLIERS: "that a transfer may be found avoidable and a recovery may be had from a subsequent transferee without suing the initial transferee."[99]   Second, Trustee points out that while *In re Black Elk* states, "[o]nce a transfer is avoided as a preference or fraudulent transfer, a trustee may then recover from 'any immediate or mediate transferee of an initial transferee,'" the very next line of the opinion says, "'[t]o plead a subsequent transfer claim, the Trustee must plead that the initial transfer is avoidable, and the defendant is a [mediate] transferee of that initial transfer.'"[100]   Therefore, Trustee concludes, he properly pleaded that the initial transfer is avoidable and the Defendants' motions to dismiss should be denied.[101]

As illustrated by the parties' contentions, courts diverge as to whether an initial transfer must be avoided prior to or simultaneously with a recovery action or whether a trustee must merely prove that it is avoidable before seeking recovery.   Fifth Circuit case law, what little exists, diverges as well.   In dicta, the Fifth Circuit in *In re Criswell* says, "[s]ection 550(a) generally

---

[96] *Id.*

[97] *Id.* (citing *In re Richmond Produce Co., Inc.*, 195 B.R. at 463; also citing *In re Imperial Corp. of Am.*, 1997 U.S. Dist. LEXIS 20945 (S.D. Cal. Aug. 20, 1997); *In re Advanced Telecomm. Network, Inc.*, 321 B.R. at 328).

[98] 20-3129, ECF No. 12 at 9–11.

[99] *Id.* at 9–10 (citing *Riederer v. Logan Wildlife Corp. (In re Brooke Corp.)*, 443 B.R. 847, 853 (Bankr. D. Kan. 2010).

[100] *Id.* at 10–11 (citing *Schmidt v. Meridian Capital Found. (In re Black Elk Energy Offshore Operations, LLC)*, 2019 Bankr. LEXIS 2561, at *26 (Bankr. S.D. Tex. Aug. 16, 2019)).

[101] *Id.* at 11.

endows the trustee, once he has avoided a transfer pursuant to § 547 or some other transfer-avoiding statute, with the ability to recover."[102]  While not the holding of the case, it recognizes that an initial transfer must actually be avoided before recovery.[103]  Another Fifth Circuit case, however, first held that a transfer was avoidable under § 547 and second that "the transfers, to the extent so avoidable, [could] be recovered from" the initial transferee.[104]  There, the court repeatedly used the word avoidable and found that the transfers were indeed avoidable, but never declared them avoided.[105]

Lower courts in the Fifth Circuit likewise diverge.  In *In re Black Elk*, the court, deciding a motion to dismiss, required only that a trustee plead that the initial transfer is avoidable to meet his pleading burden, but recited the language of § 550 in that a trustee could recover "[o]nce a transfer is avoided."[106]  There, the court distinguished between what is required to survive a motion to dismiss and what is required before recovery can be realized.[107]  In another case at the motion to dismiss stage, *In re Ramirez*, the court held that "[s]ection 550 of the Bankruptcy Code is used by the trustee to recover property for the benefit of the estate after a transfer has been ruled *avoidable*" under an applicable section of the Code.[108]  The court continued, "[t]o be viable, the complaint must allege that the transfer is avoidable under an applicable section . . . and then explain how § 550 allows the trustee to recover from the defendants, who are alleged to be immediate or mediate transferees of the allegedly fraudulent transfer."[109]  In that case, the court concluded that the trustee needed to amend his complaint because while some of the

---

[102] 1997 U.S. App. LEXIS 12784, *25.
[103] *See id.*
[104] *In re T.B. Westex Foods*, 950 F.2d 1187, 1195 (5th Cir. 1992).
[105] *See generally id.*
[106] 2019 Bankr. LEXIS 2561, at *26.
[107] *See id.*
[108] *Schmidt v. Villegas (In re Ramirez)*, 2011 Bankr. LEXIS 3056, at *5 (Bankr. S.D. Tex. Aug. 10, 2011) (emphasis added).
[109] *Id.*

debtor's transfers were held to be violations of the Texas Uniform Fraudulent Transfer Act in a separate case, the defendants in the present proceeding were not parties to that case and therefore, trustee needed to allege in the case at bar that the transfers were avoidable.[110]   *In re Ramirez* stands for the proposition that a transfer need only be proven avoidable for a trustee to recover, but it must be determined avoidable in a proceeding wherein the defendants from whom the trustee seeks recovery are parties.[111]   In a third case at the motion to dismiss stage, *In re Mirant Corporation*, the court, in dicta, disagreed with the view of some of the cases cited by the Defendants in the instant case and said, "this court believes that interpreting section 550 to require avoidance of the initial transfer before allowing recovery from [mediate] transferees 'conflates Chapter 11's avoidance and recovery sections,'" and the court found it more persuasive that "avoidance is not required as to the initial transferee as a predicate to pursuit of other transferees."[112]

Perhaps the most instructive case, however, is *In re CraftsPlus+*.[113]   There, the court considered whether "one [can] obtain a judicial determination avoiding a transfer without naming as a party the creditor for whose benefit the transfer was made."[114]   The court found that "[t]he effect of the qualifying phrase [of § 550] 'to the extent that a transfer is avoided' is that liability is not imposed on a transferee to the extent that a transferee is protected under a provision such as section 548(c)."[115] As explained by the legislative history of § 550, "[it] prescribes the liability of a transferee of an avoided transfer and enunciates the separation

---

[110] *Id.*
[111] *See id.*
[112] 2010 Bankr. LEXIS 6389, *99–*100 (N.D. Tex. Apr. 22, 2010).
[113] *See generally* 220 B.R. 331 (Bankr. W.D. Tex. 1998).
[114] *Id.* at 335.
[115] *Id.* (internal quotation marks and citations omitted).

between the concepts of avoiding a transfer and recovering from the transferee."[116]  The "to the

extent" language in subsection (a) is "designed to incorporate the protection of transferees found

in . . . 11 U.S.C. §§ 549(b) and 548(c)."[117]  As more fully explained in COLLIER:

> Under section 549(b), in an involuntary case, a transferee with knowledge or
> notice of a bankruptcy case is generally protected as to value given after the filing
> of the petition but before the order for relief.  If the value of the property
> transferred by the debtor exceeds the value given by the transferee, the transfer
> will be avoidable only to the extent of that excess.  Therefore, when the trustee
> seeks to recover the property transferred or its value under section 550(a), the
> recovery may be made only to the extent the transfer was avoided.
>
> Under section 548(c), a good faith transferee of a fraudulent transfer is generally
> given a lien to secure value given by that transferee to the debtor in exchange for
> the transfer.  If the value of the property transferred by the debtor exceeds the
> value given by the transferee, the transfer will be avoidable only to the extent of
> that excess.  Therefore, when the trustee seeks to recover the property transferred
> or its value under section 550(a), the recovery may be made only to the extent the
> transfer was avoided.[118]

Synthesizing the cases and sources cited *supra*, this Court finds that § 550 does not

require Trustee to bring an action against Ray Davis, the initial transferee, or his estate, to

recover from the Defendants as mediate transferees.  All the phrase "to the extent that a transfer

is avoided" specifies is that any recovery from the Defendants to which Trustee proves himself

entitled will be limited by certain subsections (aka safe harbor provisions) within the avoidance

sections that limit the amount of a transfer that could be statutorily avoided.[119]  Moreover,

neither § 550 nor § 544 require the transfer to be avoided as to the initial transferee before a

trustee can seek recovery from immediate or mediate transferees.[120]  First, § 544(b)(1), like § 547

discussed in *In re CraftsPlus+*, focuses on the transfer itself, not the parties to the transfer, as

illustrated by the statutory language "the trustee may avoid *any transfer of an interest of the*

---

[116] S. Rep. No. 95-989, at 90 (1978), *as reprinted in* COLLIER ON BANKRUPTCY App. Pt. 4(e)(i) (Richard Levin & Henry J. Sommer eds., 16th ed.).
[117] *Id.*
[118] COLLIER ON BANKRUPTCY at ¶ 550.02(1) (footnotes omitted).
[119] *See In re CraftsPlus+*, 220 B.R. at 335.
[120] *See id.* at 338.

*debtor in property* . . . that is voidable under applicable law by a creditor holding an unsecured claim."[121]   Second, once a trustee establishes that a qualified transfer exists, § 550 permits recovery from the initial transferee or any immediate or mediate transferees.[122]   There is nothing in § 550 requiring a trustee to seek an avoidance action specifically against the initial transferee before recovery can be realized against other transferees.[123]

Conclusively, Trustee must prove that the initial transfer is a qualified transfer under § 544(b)(1) by satisfying all of the material elements of that section, including the applicable state law, and overcoming any defense raised by the Defendants, but it is not necessary that the Trustee sue Ray Davis or his estate.[124]   Additionally, this Court must find that the transfer is avoidable and determine to what extent it is avoidable.[125]   If this Court finds that Trustee has proved the initial transfer  satisfies the elements of § 544(b)(1) and the applicable state law, then Trustee can recover from any immediate or mediate transfers who were parties to the proceeding wherein the transfers were adjudged avoidable.[126]

### b.   Whether the fraud claim underlying the first element of § 550 was pled with the particularity required by Rule 9(b).

---

[121] 11 U.S.C. § 544(b)(1) (emphasis added); *see also In re CraftsPlus+*, 220 B.R. at 334 ("11 U.S.C. § 547(b) focuses neither on creditors nor on transferees, but instead on transfers: 'Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property . . . .'' § 547 then lists a number of criteria defining what sort of transfer may be avoided. Again, these criteria modify the term 'transfer;' they do not refer to the party against whom the avoidance action is prosecuted.") (citations omitted).

[122] 11 U.S.C. § 550; *see also In re CraftsPlus+*, 220 B.R. at 338.

[123] *See* 11 U.S.C. § 550; *see also In re CraftsPlus+*, 220 B.R. at 338 ("While the avoidance and recovery process is conceptually bifurcated, both steps can be taken in the same proceeding, and nothing in the text of §§ 547 and 550 require the joinder of the "entity for whose benefit such transfer was made" for the proposes of *avoiding* the transfer. § 550(a)(1) then expressly allows recovery against either the initial transferee or the preferred creditor.").

[124] *See In re CraftsPlus+*, 220 B.R. at 338 ("Because of this transfer focus of § 547, we conclude that there is no need for the transfer in this case to be avoided *as against* [the entity for whose benefit such transfer was made], and hence no need to either to bring an independent avoidance action against [that entity], or alternatively to name [that entity] as a party in this litigation.").

[125] *See id.* ("The question for summary judgment then is whether there is a triable fact issue as to (1) whether there was a transfer that satisfies the elements of § 547(b) . . . .").

[126] *See In re Ramirez*, 2011 Bankr. LEXIS 3056, at *5 (requiring the trustee to plead in the present lawsuit that the transfers were avoidable because the current defendants were not parties to the proceeding wherein the transfers had previously been determined to violate TUFTA).

Federal Rule of Civil Procedure 9(b) applies in this case because Trustee alleges that the initial transfer is voidable for fraud.[127]   Rule 9(b) is applicable through Bankruptcy Rule 7009. Pursuant to Rule 9(b), when a party alleges fraud or mistake, it "must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."[128]   To withstand dismissal, a party pleading fraud must essentially include the who, what, when, where, how, and why of the alleged fraud, plus provide some indication as to what the person accused of fraud obtained thereby.[129]   To meet the pleading requirement for intent, "[the] plaintiff must set forth specific facts that support an inference of fraud[ulent intent]."[130]  Additionally, Rule 9(b) requires that scienter be alleged generally.[131]

The Pepperwood Defendants argue that Trustee fails to plead his fraud claim under TUFTA section 24.005(a)(1) with the particularity required by Rule 9(b) and thus, the underlying fraud claim should be dismissed for failure to state a claim under Rule 12(b)(6).[132] The Pepperwood Defendants do not dispute that Trustee pleaded the who, what, when, and where necessary to satisfy Rule 9(b), but assert that Trustee failed to plead how or why the Resolution authorizing the transfer of the Series A Stock from Debtor to Ray Davis was fraudulent.[133]   According to the Pepperwood Defendants, Trustee does not explain why the

---

[127] *See, e.g.*, *In re Brown Med. Ctr., Inc.*, 552 B.R. at 167, 174 (holding that the plaintiff failed to satisfy the requirements of Rule 9(b) as to her actual fraudulent transfer claims under TUFTA § 24.005(a)(1)); *In re Black Elk*, 2019 Bankr. LEXIS 2561, at *27 ("[T]he Court will apply Rule 9(b)'s heightened pleading standard to causes of action which allege that an initial transfer is avoidable for fraud.").

[128] FED. R. CIV. P. 9(b).

[129] *See, e.g.*, *Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997*)* (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994); *Melder v. Morris*, 27 F.3d 1097, 1100 n.5 (5th Cir. 1994); *Think3 Litig. Tr. v. Zuccarello (In re Think3, Inc.)*, 529 B.R. 147, 198 (Bankr. W.D. Tex. 2015) ("In substance, [pleading with particularity under Rule 9(b)] means that a party alleging fraud should specify the 'who, what, when, where, and how' of the alleged fraud.") (citing *Benchmark Elec. Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)).

[130] *Tuchman*, 14 F.3d at 1068.

[131] FED. R. CIV. P. 9(b).

[132] 20-3129, ECF No. 6 at 13, 15.

[133] *Id.*

Resolution was fraudulent, constituted an *ultra vires* act, or violated the corporate governance of Debtor.[134] Moreover, they maintain, the transaction was not concealed from the other shareholders because the Resolution was filed with the Texas Secretary of State.[135]

In addition to not explaining the why, the Pepperwood Defendants argue that Trustee fails to explain how creditors were hindered, delayed, or defrauded by the issuance of the Series A Stock, where the issuance of stock by an insolvent entity does not belong to the estate or affect the rights of a debtor's creditors.[136] Lastly, the Pepperwood Defendants argue that if Trustee intends to bring a fraud claim against Kalil and O'Donnell for their alleged involvement in the Resolution that caused the issuance of the Series A Stock to Ray Davis, then Trustee must plead that claim with particularity, which he has not done.[137]

Trustee responds that he sufficiently pleaded under Rule 9(b) because he outlined several factors in his complaint from which the Court may infer fraud.[138] Trustee further contends that he sufficiently pleaded intent because he alleged that Ray Davis had stolen millions of dollars from Debtor before, that Ray Davis was under pressure from investors, and that Ray Davis threatened to shut down Debtor if the transfer was not made.[139] Lastly, Trustee maintains that its unquestionable that the transfer hindered, delayed, or defrauded creditors because the money paid to Ray Davis for the Series A Stock should have been paid to Debtor instead for the benefit of all creditors.[140]

In *In re Cipolla*, the Fifth Circuit held that "because direct evidence of intent is usually

---

[134] *Id.* at 13–14.
[135] *Id.* at 14.
[136] *Id.* at 14–15.
[137] *Id.*
[138] 20-3129, ECF No. 12 at 6–7.
[139] *Id.* at 7.
[140] *Id.*

unavailable, actual intent may be inferred from circumstantial evidence."[141]   That circumstantial evidence includes "badges of fraud" found in applicable state law, such as TUFTA.[142]   Because these badges of fraud are non-exclusive and no single factor is dispositive, where several badges are found, "they can be a proper basis for an inference of fraud."[143]   Trustee alleges facts related to four of the badges outlined in TUFTA section 24.005(b):

| Badge of Fraud[144] | Trustee's Allegation[145] |
|---|---|
| Transfer to an insider | Debtor's Series A Stock was transferred to Ray Davis, the Debtor's founder, CEO, and chairman. |
| Transfer was concealed | Ray Davis pressured only other director to sign Resolution, the stock issuance was not put to a shareholder vote, and the issuance to Ray Davis was concealed.[146] |
| Before the transfer was made, the debtor had been sued or threatened with suit | Ray Davis had been stealing from the Debtor for several years prior to the issuance of the Series A Stock and knew he needed an exit strategy. |
| Value of consideration received by the debtor was not reasonably equivalent to the value of the asset transferred | The stated consideration was nothing other than duties Ray Davis was already required to provide as Chairman of the Debtor. |
| Debtor was insolvent or became insolvent shortly after the transfers were made | Debtor was insolvent. |

Where three or four badges have been found sufficient to infer a fraudulent transfer in other cases, Trustee pleaded that the initial transfer was fraudulent with sufficient particularity.[147]

Additionally, Rule 9(b) requires that scienter be alleged generally.   Where an individual

---

[141] *Cipolla v. Roberts (In re Cipolla)*, 541 F. App'x 473, 477 (5th Cir. 2013).

[142] *Id.*

[143] *Id.* (citing *In re Soza*, 542 F.3d 1060, 1067 (5th Cir. 2008).

[144] TEX. BUS. & COM. CODE § 24.005(b)(1), (3)–(4), (8).

[145] 20-3129, ECF No. 1 at 2–5, 9.

[146] The Pepperwood Defendants' argument that the Resolution filing with the Texas SOS is evidence that the transaction was not concealed is an argument to be considered at a later stage in this litigation.   As a defense, the Trustee is not required to address it in his complaint.   *Construction Cost Data, LLC v. Gordian Grp., Inc.*, 2017 U.S. Dist. LEXIS 77481, at *15 (S.D. Tex. Apr. 24, 2017).

[147] *See Tow v. Speer*, 2015 U.S. Dist. LEXIS 29267, at *37 (S.D. Tex. 2015).

has authority to act on behalf of an entity, that individual's intent may be imputed to the entity.[148]

Because Ray Davis as CEO and Chairman of Debtor had authority to act on its behalf, his intent

can be imputed to Debtor.[149]   Trustee alleged that Ray Davis intended to commit the fraud as

evidenced by his previous theft from Debtor, the pressure he faced from investors seeking the

return they were promised, and Ray Davis's threats to shut down Debtor if the Series A Stock

was not transferred to him.[150]   These allegations speak to Debtor's intent generally, by way of

Ray Davis's intent, to commit the fraudulent transfer.  Accordingly, this Court finds that Trustee

pleaded that the initial transfer is avoidable for fraud under TUFTA section 24.005(a)(1) with the

particularity required by Rule 9(b).

Lastly, in his reply to the Pepperwood Defendants' Motion, Trustee states that the only

claim against Kalil and O'Donnell is for recovery under § 550.  Trustee does not allege that Kalil

and O'Donnell committed fraud.  Any showing of fraud that Trustee attempts to make is purely

related to the transfer from Debtor to Ray Davis and intended to satisfy the first prong of § 550

so that Trustee may recover from Kalil and O'Donnell as immediate or mediate transferees of the

initial transferee, Ray Davis.

### c.   Whether Trustee's causes of action are time barred.

Trustee alleges that the transfer of Series A Stock from Debtor to Ray Davis is avoidable

under TUFTA sections 24.005(a)(1), 24.005(a)(2), and 24.006(a) by way of § 544(b)(1).  The

Defendants argue that Trustee could never satisfy the first prong of § 550 because the predicate

avoidance action is time-barred under both state law, TUFTA section 24.010, and the

Bankruptcy Code, §§ 108 and 546.  They maintain that Trustee had four years from the date of

---

[148] *See West v. Seiffert (In re Houston Drywall, Inc.)*, 2008 Bankr. LEXIS 4060, at *95 (Bankr. S.D. Tex. July 10, 2008).
[149] *See id.*
[150] 20-3127, ECF No. 1 at 3–5; 20-3129, ECF No. 1 at 3–5.

the transfer to bring a claim under TUFTA; thus, they calculate, Trustee had until April 13, 2019 to bring an avoidance action. [151] Sections 108[152] and 546,[153] they continue, extended the timeframe to bring an avoidance action by two years from entry of the Order for Relief, which was on May 15, 2018, giving Trustee until May 15, 2020, to bring a claim against Ray Davis or his estate.[154]   Because Trustee failed to do so, they conclude, Trustee's complaint must be dismissed as he could never avoid the initial transfer and therefore never satisfy the first element of § 550, which is a prerequisite to recovery against the Defendants.[155]

When a trustee brings a claim under § 544(b), "the bankruptcy trustee steps into the shoes of an unsecured creditor who was in existence when the case was filed and who may avoid the transfer under applicable state law."[156]   That subjects the trustee to any defenses that could be lodged against the unsecured creditor.[157] Here, Trustee is subject to the Defendants' asserted defenses pursuant to TUFTA section 24.010 and Bankruptcy Code §§ 108 and 546.   TUFTA section 24.010 states:

> (a) Except as provided by Subsection (b) of this section, a cause of action with respect to fraudulent transfer or obligation under this chapter is extinguished unless action is brought:
> (1) under Section 24.005(a)(1) of this code, within four years after the transfer was made or the obligation as incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant;
> (2) under Section 24.005(a)(2) or 24.006(a) of this code, within four years after the transfer was made or the obligation was incurred; or
> (3) under Section 24.006(b) of this code, within one year after the transfer was made.

---

[151] 20-3127, ECF No. 5 at 5; 20-3129, ECF No. 6 at 19.
[152] 20-3127, ECF No. 5 at 5.
[153] 20-3129, ECF No. 6 at 19.
[154] 20-3127, ECF No. 5 at 5; 20-3129, ECF No. 6 at 19.
[155] 20-3127, ECF No. 5 at 5; 20-3129, ECF No. 6 at 19.
[156] *Smith v. Am. Founders Fin., Corp.*, 365 B.R. 647, 675 (S.D. Tex. 2007). *Accord Genter v. Reed (In re Genter)*, 2020 U.S. Dist. LEXIS 103019, at *4 (N.D. Tex. June 12, 2020).
[157] *Smith*, 365 B.R. at 675.

Under section 24.010, Trustee needed to bring any claim pursuant to TUFTA sections 24.005(a)(1), 24.005(a)(2), and 24.006(a) no later than April 13, 2019.  However, both § 108 and § 546 of the Bankruptcy Code extend a state statute of repose, like section 24.010, for two years beyond entry of the order for relief.[158]  Section 108(a) states:

> (a) If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of filing of the petition, the trustee may commence such action only before the latter of—
>> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>> (2) two years after the order for relief.

In *Stanley*, the Fifth Circuit held that, "[t]he language of Section 108(a) compels the conclusion that Congress expressly extended the time for pursuing any action that would otherwise be time-barred under state law."[159]  Therefore, this Court must decide whether the time period for bringing a claim under TUFTA expired "before the date of filing of the petition"[160] to determine whether Trustee had two years beyond entry of the Order for Relief to make a claim.

The transfer of the Series A Stock is alleged to have occurred on April 13, 2015.[161]  Debtor's bankruptcy petition was filed on April 13, 2018.[162]  Thus, at the time the involuntary bankruptcy petition was filed, the four-year time period for filing a claim under TUFTA sections 24.005(a)(1), 24.005(a)(2), and 24.006(a) had not yet expired.  The filing of the involuntary petition furnished Trustee an additional two years from entry of the Order for Relief to bring a claim.[163]  The Order for Relief was entered on May 15, 2018, so Trustee had until May 15, 2020 to bring a claim pursuant to the relevant TUFTA sections.

---

[158] *See* 11 U.S.C. §§ 108(a), 546(a).
[159] *Stanley v. Trinchard*, 579 F.3d 515, 519 (5th Cir. 2009).
[160] 11 U.S.C. § 108(a).
[161] 20-3127, ECF No. 1 at 4; 20-3129, ECF No. 1 at 4–5.
[162] 18-31910, ECF No. 1.
[163] 11 U.S.C. § 108.

Additionally, § 546(a) states:

> (a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—
> (1) the later of—
>     (A) 2 years after the entry of the order for relief; or
>     (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or
> (2) The time the case is closed or dismissed.

While the *Stanley* court did not decide whether § 546, like § 108, takes precedence over a state statute of repose, courts that have assessed the application of § 546 hold that because it "is designed to give the trustee 'some breathing room' to determine which claims to bring under section 544[,]" it "provides the trustee an additional two years from the time of his appointment to file a fraudulent-transfer action."[164]   As previously explained, Trustee still had one year to file a state fraudulent-transfer claim under TUFTA at the time the involuntary petition was filed. The filing of the involuntary petition extended any cause of action asserted pursuant to § 544 by two years from entry of the Order for Relief.[165]   Therefore, Trustee had until May 15, 2020 to timely file the instant complaints.

The Court must decide whether Trustee's complaints—which allege that the transfer of the Series A Stock from Debtor to Ray Davis is avoidable and was filed on May 12, 2020, just days before the extension period under §§ 108 and 546 expired—withstand the Defendants' time-bar challenges.   As discussed *supra*, this Court finds that Trustee must allege, and later prove, that the initial transfer meets the elements of § 544 and the applicable state law to

---

[164] *Smith*, 365 B.R. 647, 677–78 (citing *In re Dry Wall Supply, Inc.*, 111 B.R. 933, 936–37 (D. Colo. 1990)). *Accord In re Genter*, 2020 U.S. Dist. LEXIS 103019, at *4–*5 ("The Court recognizes that there is no directly controlling decision in the Fifth Circuit regarding whether section 546 preempts the TUFTA state of repose.  However, Fifth Circuit law is clear that Bankruptcy Code sections 544 and 546 concern 'federally-created claim(s),' the 'subject of bankruptcy falls within the express constitutional power of Congress, and bankruptcy law therefore takes precedence over state laws under the Supremacy Clause.'") (quoting *Stanley*, 579 F.3d at 519).
[165] *See* 11 U.S.C. § 546(a)(1)(A).

establish that the transfer is avoidable (not actually avoid the transfer) and overcome any defenses the Defendants could raise against an unsecured creditor bringing an avoidance action. Here, because Trustee filed his complaints before May 15, 2020, and alleged that the initial transfer is avoidable with sufficient particularity, this Court finds that it is not impossible for Trustee to satisfy the first prong of § 550 and denies the Defendants' request to dismiss on these grounds.

### d.   Whether the recovery would be for the benefit of Debtor's estate.

The Defendants' next argument is twofold.  First, the Defendants argue that Count 1 should be dismissed because Debtor did not have an interest in the Series A Stock[166] and second, that the stock is worthless.[167]  Thus, as the argument goes, Trustee cannot meet the elements of an avoidance action under § 544(b)(1), which declares "a trustee may avoid any transfer of an interest of the debtor in property," or the second element of § 550, which provides, "the trustee may recover, for the benefit of the estate."  The Court will take each argument in turn.

The Defendants argue that Debtor did not have an interest in the Series A Stock.  The Davis Defendants cite to *Decker* and *Curry* for the proposition that a corporation does not have a property interest in its unissued stock because stock affects only the equitable ownership of the corporation and has no extrinsic value.[168]  Because Debtor does not have an interest in unissued stock, they continue, Trustee would not be "avoid[ing a] transfer of an interest of the debtor in property."[169]  Therefore, any fraudulent transfer claim should be dismissed because the Series A Stock was equity in Debtor, not property, and thus, could not be fraudulently transferred.[170]

---

[166] 20-3127, ECF No. 5 at 7; 20-3129, ECF No. 6 at 20–22.
[167] 20-2137, ECF No. 5 at 7; 20-3129, ECF No. 6 at 22–24.
[168] *Decker v. Advantage Fund Ltd.*, 362 F.3d 593, 596 (9th Cir. 2004); *In re Curry & Sorenson, Inc.*, 57 B.R.  824, 829 (B.A.P. 9th Cir. 1986).
[169] 11 U.S.C. § 544(b)(1).
[170] 20-3127, ECF No. 5 at 7.

Likewise, the Pepperwood Defendants argue that the Series A Stock represented an equity interest in Debtor and that the issuance of that stock affected only the voting rights of the existing owners of Debtor and had no effect on the net value of Debtor.[171]  They conclude that because the transfer of the Series A Stock to Ray Davis could not have an impact on what was available to pay Debtor's creditors, no creditor has standing to avoid the transfer.[172]

The Davis Defendants next contend that because the second element of § 550 requires that any recovery benefit the estate, and a return of the transferred stocks would net $0 for the estate, Trustee has no viable recovery claim.[173]  Making a similar argument, the Pepperwood Defendants cite *U.S. Bank National Association v. Verizon Communications Inc.* for the proposition that even if the Series A Stock was an asset of Debtor, it was nevertheless worthless because Debtor was insolvent at the time of the transfer and the stock of an insolvent company has no value.[174]  Worthless stock, they continue, cannot be the subject of a fraudulent transfer.[175] The Pepperwood Defendants add that because Trustee essentially pled that Debtor was "hopelessly insolvent," Trustee's allegation that Debtor had an interest in the Series A Stock fails.[176]

Trustee responds by citing to two non-Fifth Circuit cases for the proposition that a corporation's stock, which can be exchanged with third parties for value, benefits the corporation.[177]  The court in *Global Estate Crossing Representative v. Winnick* reasoned that "[g]iven a corporation's power to transfer stock to third parties in exchange for value, the

---

[171] 20-3129, ECF No. 6 at 21.
[172] *Id.* at 21–22.
[173] 20-3127, ECF No. 5 at 7.
[174] 20-3129, ECF No. 6 at 22.
[175] *Id.*
[176] *Id.* (citing *Glob. Crossing Estate Representative v. Winnick*, 2006 U.S. Dist. LEXIS 53785, at *31 (S.D.N.Y. Aug. 3, 2006) ("While it is true that under certain circumstances the stock of an insolvent corporation may have value based on its estimated future profitability, that is not the case where the fundamental premise of the complaint is that the corporation was doomed to fail.")).
[177] 20-3127, ECF No. 6 at 6; 20-3129, ECF No. 12 at 12.

argument that the corporation lacks an interest in the stock itself at the time of issuance blinks economic reality."[178]  In *In re Pitt Penn Holding Company*, the court held that it could infer that the debtor could have exchanged the stock for services that benefitted the debtor and that because the debtor had fewer assets on hand at the time of the petition, creditors were harmed by the stock issuance.[179]  Trustee argues that "Ray Davis effectively hijacked the Debtor's Stock issuance for his own benefit, pocketing funds that should have been paid to the Debtor, a portion of which were gifted to Defendants. The Debtor was distinctly disadvantaged by these actions which ultimately led in part to the Debtor's demise."[180]  Debtor transferred the Series A Stock to Ray Davis and then that stock was promptly sold for $15 million, which refutes any notion that the stock was worthless, contends Trustee.[181]  Those funds should have been paid to Debtor, not Ray Davis.[182]  At the Hearing, the Trustee concluded that if the Series A Stock was returned to Debtor, it would have put the ownership back where it was before the transfer and the creditors would not have been disadvantaged by the transfer to Ray Davis.

Courts are split as to whether the issuance of stock constitutes an interest of the debtor. Based on this Court's review, *U.S. Bank National Association v. Verizon Communications Inc.* is the only case in the Fifth Circuit that touches on this issue, but that case merely noted the cases cited by the parties in the instant case and did not decide whether issuance of stock is a transfer of property.[183]  However, taking Trustee's allegations as true, the Series A Stock was an interest of Debtor because it was allegedly exchanged with a third party, Pepperwood II, for value. Trustee alleges that Pepperwood II was formed "as a vehicle to raise cash from investors to

---

[178] 2006 U.S. Dist. LEXIS 53785, at *28–*29.
[179] 484 B.R. 25, 46 (Bankr. D. Del. 2012).
[180] 20-3127, ECF No. 6 at 7.
[181] 20-3129, ECF No. 12 at 12.
[182] *Id.*
[183] 2012 U.S. Dist. LEXIS 106576, at *16, *35–*36 (N.D. Tex. July 31, 2012).

acquire the Series A Stock from Ray Davis."[184]  Pepperwood II then paid Ray Davis nearly $10 million for the stock[185] and another nearly $5 million was paid to Pepperwood I.[186]  Therefore, investors still had an interest in Debtor, and more importantly, Debtor's stock, at the time of the transfers.  These facts demonstrate that Debtor had an interest in the stock.

Next, this Court considers whether Trustee's allegations, if proven, would demonstrate that the Series A Stock was worthless and thus could not be fraudulently transferred.  The Pepperwood Defendants argue that because Trustee alleges that Debtor was insolvent, the stocks were worthless,[187] but as the court *In re Pitt Penn* declared, "allegations of insolvency alone are insufficient to negate the assertion that the stock has value."[188]  While Trustee alleges that Debtor was insolvent,[189] there are also allegations that investors were willing to contribute to the purchase of the stocks and a third party, Pepperwood II, valued and purchased the stock at $15 million.[190]

Moreover, in *U.S. Bank*, the court dismissed the plaintiff's fraudulent transfer claim as to the issuance of debtor's stock because it said that if the debtor was indeed insolvent at the time of the transfer, as alleged by the plaintiff, then regardless whether the transfer of the stock constituted a transfer of property, the stock was worthless and the debtor did not lose any property in the sale; thus, the creditors could not have been harmed by the sale.[191]  However, the court entertained plaintiff's point that the transferee could have sold the shares on the open market for billions of dollars, but the court ultimately discounted that argument because the transferee instead gave the shares to its shareholders and did not reap the billions of dollars it

---

[184] 20-3217, ECF No. 1 at 5; 20-3129, ECF No. 1 at 6.
[185] 20-3127, ECF No. 1 at 6.
[186] 20-3129, ECF No. 1 at 6.
[187] *Id.* at 22–23.
[188] *In re Pitt Penn Holding Co.*, 484 B.R. at 46.
[189] 20-3127, ECF No. 1 at 8; 20-3129, ECF No. 1 at 8.
[190] 20-3127, ECF No. 1 at 6; 20-3129, ECF No. 1 at 6.
[191] 2012 U.S. Dist. LEXIS 106576, at *36.

could have on the open market.[192]   The court concluded that the only parties who could have realized a windfall from the transfer of the stocks were the shareholders, who were not parties to the suit.[193]

The situation in the instant case is different than that in *U.S. Bank* because here, the Defendants allegedly benefited from the fraudulent stock transfer when they received portions of the value of the Series A Stock sale in the form of monetized funds and thus, the Defendants are akin to the shareholders in *U.S. Bank*.  And the Defendants here, unlike the shareholders, are named in this suit.

Taking the Trustee's well-pled allegations as true, as this Court must at the motion to dismiss stage, it is clear that Debtor and its stock were still monetarily valued by investors at the time of the allegedly fraudulent transfer.  It is difficult to comprehend how the Series A Stock was worthless when it was quickly sold by Ray Davis for $15 million after its transfer.  If Debtor sold the stock, instead of Ray Davis, the $15 million would have been in Debtor's treasury for the benefit of its creditors.  Therefore, it is plausible that return of the stock or the value thereof would increase the net value of Debtor.

   **e.  Whether Trustee may recover the property transferred, or the value thereof (including proceeds) from any immediate or mediate transferee of this initial transferee.**

Section 550(a)(2) provides "to the extent that a transfer is avoided . . . the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property" from the immediate or mediate transferee of the initial transferee.[194]   While the statute allows the trustee to recover the "property transferred" or, if authorized by the court, "the value of such property," the statute is silent as to whether proceeds can be recovered.   The

---

[192] *Id.* at *37.
[193] *Id.*
[194] 11 U.S.C. § 550(a)(2).

Defendants argue that the funds they received from Ray Davis were "proceeds" of the stock sale to Pepperwood II, not the property itself or the value of the property;[195] thus, they cannot be mediate transferees.[196]

In response, Trustee relies on *In re Generation Resources Holding Company, LLC*, to support his argument that "it is irrelevant that Defendants did not receive the actual property transferred to Ray Davis—the Stock—but only received proceeds of the sale of the Stock."[197]  In *Generation*, the debtor's insiders created a new entity and transferred the property—the contract right to receive payments—to said entity.[198]  The insiders then sold the entity to an unrelated company and used some of the proceeds to pay two law firms.[199]  After the bankruptcy filing, the trustee sued the law firms to recover the proceeds.[200]  The district court held that the law firms were immediate transferees of the entity under § 550(a)(2) because the proceeds paid to the law firms represented the value of the property fraudulently transferred.[201]

However, as Trustee acknowledges in his supplemental brief in support of his objection to the motion to dismiss,[202] the Tenth Circuit reversed the district court's decision and remanded with instructions to dismiss the trustee's adversary complaints.[203]  The Tenth Circuit's opinion, however, focuses not on whether proceeds are reachable under § 550, but rather on who qualifies as an immediate or mediate transferee.  The court found that the "law firms are not [immediate or

---

[195] 20-3127, ECF No. 5 at 6; 20-3129, ECF No. 6 at 24–25.

[196] 20-3127, ECF No. 5 at 6 (citing *Lassman v. Santosuosso (In re Ruthaford)*, 2015 Bankr. LEXIS 1024, at *38 (Bankr. D. Mass. 2015) ("Section 550(a) does not extend the right of recovery to the proceeds of the property transferred.  Where the drafters of the Bankruptcy Code meant to include proceeds, they were clear about it.")); 20-3129, ECF No. 6 at 25 (citing *In re Ruthaford*, 2015 Bankr. LEXIS 1024, at *38).

[197] 20-3127, ECF No. 6 at 4–5; *In re Generation Resources Holding Company, LLC*, 604 B.R. 896 (Bankr. D. Kan. 2019).

[198] *Rajala v. Husch Blackwell LLP (In re Generation Res. Holding Co., LLC)*, 604 B.R. 896, 897 (Bankr. D. Kan. 2019).

[199] *Id.*

[200] *Id.* at 898.

[201] *Id.* at 898–99.

[202] ECF No. 16 at 2.

[203] *Rajala v. Spencer Fane LLP (In re Generation Res. Holding Co., LLC)*, 964 F.3d 958, 962 (10th Cir. 2020).

mediate] transferees because they never received the property transferred."[204]  It further noted that an order permitting the trustee to recover the value of the transferred property, as provided by § 550, would be futile because it does not change who the trustee may recover from, i.e., the initial transferee, the entity for whose benefit such transfer was made, or any immediate or mediate transferee of such initial transferee.[205]  Because the law firms never exercised dominion and control over the property that was transferred—the contract right—they were not mediate transferees.[206]

As pointed out by the parties, *Generation* is the only circuit-level case directly on point. Unsurprisingly, Defendants agree with the Tenth Circuit that "[i]f [Congress's] intent was to provide the trustee with power to trace proceeds . . . it could have [written § 550 to say] so."[207] Because the Court must "read the statute, read the statute, read the statute,"[208] they maintain, they cannot be mediate transferees where they were never transferred the stocks and only received the proceeds of the sale of that stock.[209]

Trustee's counter argument is that proceeds from the property of the estate are included in the debtor's estate.[210]  And as the Supreme Court ruled in *Begier v. IRS*, the property subject to an avoidance action is property that would have been property of the estate had it not been transferred.[211]  Thus, Trustee concludes, if the Series A Stock was property of the estate, so too are the proceeds from the sale of the Series A Stock by way of § 541(a)(6).[212]

---

[204] *Id.* at 967.
[205] *Id.*
[206] *Id.*
[207] *In re Generation Res. Holding Co., LLC*, 964 F.3d at 968.
[208] *See United States v. Koutsostamatis*, 956 F.3d 301, 306 (2020) ("In statutory interpretation, [courts] have three obligations: '(1) read the statute; (2) read the statute; (3) read the statute!'") (quoting HENRY J. FRIENDLY, BENCHMARKS 202 (1967)).
[209] 20-3127, ECF No. 5 at 6.
[210] 20-3127, ECF No. 16 at 2 (citing 11 U.S.C. § 541(a)(6); 20-3129, ECF No. 12 at 14 (same).
[211] 20-3127, ECF No. 16 at 3 (citing 496 U.S.53, 58 (1990); 20-3129, ECF No. 12 at 14 (same).
[212] 20-3127, ECF No. 16 at 3; 20-3129, ECF No. 12 at 14.

The Defendants respond that, like the Tenth Circuit said in *Generation*, property of the estate under § 541 includes "[a]ny interest in property that the trustee recovers under section . . . 550 . . . of this title," and if proceeds were covered under § 550, Congress would not need to include proceeds again in § 541(a)(6).[213]  Moreover, *Generation* says, "[t]he fact that the Code treats '[p]roceeds' as distinct from 'property that the trustee recovers' under § 550 is strong evidence that the two species of property are different, at least in some respects."[214]

The parties in the instant case and the sources they cite raise novel legal arguments that are underdeveloped in the case law.  Trustee's argument that proceeds from the Series A Stock sale are property of the estate under § 541(a)(6) has merit.  Section 541(a)(6) is a "generous provision that sweeps into the bankruptcy estate all interests held by the debtor -- even future, non-possessory, contingent, speculative, and derivative interests."[215]  Congress intended for the definition of proceeds to be more expansive than that found in the Uniform Commercial Code and "encompass[] any conversion in the form of property of the estate, and anything of value generated by property of the estate."[216]  Therefore, if Debtor had an interest in the Series A Stock, which this Court already found that Trustee pleaded facts from which this Court can reasonably infer that it did, then under the expansive definition of § 541(a)(6), the conversion of the Series A Stock, which resulted in monetized funds that were later transferred to the Defendants, are also property of the estate.

This Court is not persuaded by the Defendants' argument that if proceeds are covered under § 550 and thereby property of the estate under § 541(a)(3), then Congress had no need to

---

[213] *In re Generation Res. Holding Co., LLC*, 964 F.3d at 968.
[214] *Id.*
[215] *McLain v. Newhouse (In re McLain)*, 516 F.3d 301, 312 (5th Cir. 2008) (quoting *In re Dibiase*, 270 B.R. 673, 676 (Bankr. W.D. Tex. 2001)); *see also Reed v. Rabe (In re Grotjohn)*, 289 Fed. App'x 702, 704 (5th Cir. 2008).
[216] *In re McLain*, 516 F.3d at 312 (citing *In re Hanley*, 305 B.R. 84, 86–87 (M.D. Fla. 2003) (quoting S. Rep. No. 95-898 (1978); H.R. Rep. No. 95-595, at 368 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5787)).

include proceeds again in § 541(a)(6). As discussed previously, the definition of "proceeds" is broad and because "proceeds . . . of or from property of the estate"[217] exist in numerous contexts outside recovery actions under § 550, including proceeds in § 541(a)(6) is necessary, even if proceeds are covered under § 541(a)(3).

Moreover, there are two cases from within the Fifth Circuit that treat sales proceeds as synonymous with value. In *In re Wiggains*, the court awarded the trustee nearly $600,000 in proceeds, pursuant to § 550, from the sale of the debtor's homestead, after the court avoided a partition agreement entered into by the debtor and his non-filing spouse, which converted their homestead from community property to separate property in an undivided one-half interest for each spouse.[218] In *In re Silver State Holdings*, the court avoided the foreclosure sale of real property and found that the creditor, in the shoes of the trustee, was entitled to recovery of the sales proceeds because those proceeds were considered the "property transferred" or, in the alternative, the value thereof, pursuant to § 550.[219]

In both cases, however, the courts were ordering recovery from the initial transferee, the transferee that exercised control over the property transferred directly from the debtor. Thus, even if these cases stood for the proposition that "proceeds" and "value" are synonymous and this Court has already found that the Series A Stock's sales proceeds were property of the estate under § 541(a)(6), this Court must still determine whether Trustee could recover those proceeds from the Defendants where the proceeds are not the property transferred[220] and the Defendants

---

[217] 11 U.S.C. § 541(a)(6).

[218] *Wiggains v. Reed (In re Wiggains)*, 2015 Bankr. LEXIS 1460, at *19, *24–*26, *78 (Bankr. N.D. Tex. Apr. 27, 2015), *aff'd*, 848 F.3d 655 (5th Cir. 2017).

[219] *Valley Ridge Roofing & Constr., LLC v. Silver State Holdings (In re Silver State Holdings)*, 2020 Bankr. LEXIS 2682, at *3–*4, *63–*64 (Bankr. N.D. Tex. Sept. 30, 2020).

[220] *See* 11 U.S.C. § 550.

never exercised control over the Series A Stock itself.[221]   The real issue here is whether the Defendants qualify as immediate or mediate transferees.   To decide whether to grant the Defendants' Motions to Dismiss, that is precisely the issue this Court must decide, not whether proceeds can be reached under § 550.

### f.   Whether the Defendants are immediate or mediate transferees.

The court in *Generation* found that under § 550, the universe of transferees is limited to only those that were transferred the property itself and "[i]f [Congress's] intent was to provide the trustee the power to trace proceeds derived from the property against any person who received those proceeds as payments for goods or services, Congress could have said so."[222]

Trustee argues that *Generation* was wrongly decided and points to two articles in favor of his contention.   First, an American Bankruptcy Institute article observes that "the Tenth Circuit gutted fraudulent transfer law and blessed a process allowing a fraudster to immunize proceeds from recovery."[223]   Second, an article by Northwestern Law Professor Bruce Markell insists that the Tenth Circuit got it wrong, in part because it requires one to be a transferee of the property transferred before recovery can be realized where the statute merely says transferee, not transferee of the transferred property.[224]   Markell goes on to say that "[i]t is normal locution to say that 'value has been transferred' to a transferee without any physical transfer of a tangible object."[225]

---

[221] *In re Generation Res. Holding Co., LLC*, 964 F.3d at 967 (finding that the law firms were not immediate or mediate transferees because they never received the property transferred—the contractual rights).
[222] *In re Generation Res. Holding Co., LLC*, 964 F.3d at 968.
[223] AMERICAN BANKRUPTCY INSTITUTE, TENTH CIRCUIT PROTECTS SUBSEQUENT RECIPIENTS OF FRAUDULENT TRANSFER WITH A NEW DEFENSE 2 (Bill Rochelle ed.) (2020).
[224] Bruce A. Markell, *Where Does the Flame Go When the Candle Is Blown Out, or Why Can't Courts Grasp the Concept of Intangibles?*, 40 BANKR. L. LETTER 1, 11 (2020).
[225] *Id.*

The Defendants maintain that they are not mediate transferees because, as Trustee pleads, they never possessed the Series A Stock.[226]  Pepperwood II, they continue, is the immediate transferee of Ray Davis, the initial transferee, not the Davis Defendants or the Pepperwood Defendants, and Trustee failed to sue Pepperwood II.[227]  Further, the Davis Defendants say, Trustee neither alleges that Pepperwood II was a mere conduit of the transferred property nor that the Davis Defendants had knowledge of the stock transfer to Pepperwood II.[228]  Because they are not mediate transferees, the Defendants conclude, Trustee's claim must be dismissed.[229]

Determining whether the Defendants are mediate transferees where they did not exercise control over the property transferred is an issue of first impression for this Court and indeed within the Fifth Circuit.  In fact, based on this Court's review, case law outside the Fifth Circuit on this precise issue is practically nonexistent.  As the Davis Defendants articulated, this Court must begin with the plain language of the statute.[230]  If "the statutory scheme is coherent and consistent, there is generally no need for a court to inquire beyond the plain language of the statute."[231]  However, if the statutory language is susceptible to more than one reasonable interpretation, then a court may look beyond the text of the statute.[232]

This Court begins with the plain language of § 550 and employs the relevant canons of statutory construction.[233]  As *Generation* explains, the word "transfer" appears once before the

---

[226] 20-3127, ECF No. 5 at 6; 20-3129, ECF No. 6 at 25.
[227] *Id.*
[228] 20-3127, ECF No. 5 at 6.
[229] 20-3127, ECF No. 5 at 6; 20-3129, ECF No. 6 at 25.
[230] *Whitlock v. Lowe (In re Deberry)*, 945 F.3d 943, 947 (5th Cir. 2019) ("In matters of statutory interpretation, text is always the alpha.").
[231] *United States v. Ron Pair Enters.*, 489 U.S. 235, 240–41 (1989).
[232] *Wallace v. Rogers (In re Rogers)*, 513 F.3d 212, 226 (5th Cir. 2008).
[233] *See Carrieri v. Jobs.com*, 393 F.3d 508, 518 (5th Cir. 2004) ("Only after the application of the principles of statutory construction, including the canons of construction, and after the conclusion that the statute is ambiguous may the court turn to the legislative history.") (citing *United States v. Kay*, 359 F.3d 738, 743 (5th Cir. 2004)).

phrase "property transferred" in § 550.[234]   That transfer refers to one that can be avoided under any of the enumerated provisions.[235]   Therefore, the most natural reading of the statute is that the "transferred property" is whatever property that was the subject of the related avoidance action.[236]   In the instant case, that would be the Series A Stock itself.   Importantly, *Generation* stands for the proposition that regardless whether the trustee seeks to recover the property transferred (i.e. the stocks) or the value thereof (i.e. $15 million) pursuant to a court order, the universe of transferees is limited to those who exercised dominion and control over the actual property transferred.[237]   Following that logic, Trustee here could recover $15 million from the initial transferee, Ray Davis, or from the immediate transferee, Pepperwood II, the entity that paid Ray Davis $15 million in exchange for the stock because both of those entities exercised dominion and control over the stocks.   And if the Series A Stock was transferred to any other party, Trustee could recover from that party, as well.   However, under *Generation*, Trustee could never recover the value of the Series A Stock from the Defendants because they never exercised dominion and control over the stocks and thus, they are not mediate transferees, even if they now hold some of the value of those stocks in the form of monetized funds.   While this reading makes sense at first glance, it does not give enough consideration to the language used in subsections (a)(1) and (a)(2).

The most significant phrase to the instant case is "any immediate or mediate transferee *of such initial transferee*."[238]   To be an immediate or mediate transferee, one need only be a transferee of the initial transferee.   The statute does not say "any immediate or mediate transferee *of the property transferred*."   In contrast, to be an initial transferee, one must have been involved

---

[234] *See In re Generation Res. Holding Co., LLC*, 964 F.3d at 966.
[235] *Id.*
[236] *Id.*
[237] *Id.*
[238] 11 U.S.C. § 550(a)(2) (emphasis added).

in the avoided transfer ("initial transferee of such transfer").[239]   Those transfers necessarily

involve the transferred property itself.  However, that same restriction is not placed on immediate

and mediate transferees.  Instead, they are subject to recovery actions based solely on their

relationship with the initial transferee.  Thus, so long as they received a transfer from the initial

transferee, the trustee can recover the property transferred, if the initial transferee did indeed

transfer that property, or the trustee can recover the value of the property transferred, if the

transferred property is no longer available or if what the transferee received was the value of that

property.  Here, Ray Davis was the initial transferee because he received the Series A Stock from

Debtor, he then exchanged that stock for value and $4,996,950 of that value was allegedly

transferred directly to Pepperwood I and subsequently to Kalil and O'Donnell.[240]   Another

$1,676,000 was allegedly transferred from Ray Davis's bank account to the Davis Defendants.[241]

Those are the funds Trustee now seeks to recover.

Moreover, it is a "cardinal rule that a statute is to be read as a whole, since the meaning

of statutory language, plain or not, depends on context."[242]   Section 550(b) provides a complete

defense only to immediate or mediate transferees, not the initial transferee.[243]   That defense

prevents a trustee from recovering from one who "[took] for value . . . in good faith, and without

knowledge of the voidability of the transfer avoided."[244]   If the *Generation* court is correct in

who qualifies as a mediate transferee, then recovery would be barred against those who received

the value of the property transferred even if they were aware of the voidability of the transfer or

took it in bad faith. That result fails to consider § 550(a) in context.  The complete defense set

---

[239] *Id*. § 550(a)(1).
[240] 20-3129, ECF No. 1 at 6.
[241] 20-3127, ECF No. 1 at 6–7.
[242] *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991) (citations omitted).
[243] 11 U.S.C. § 550(b) ("The trustee may not recover under section (a)(2) of this section from . . . .").
[244] *Id.*

out in § 550(b) adequately protects those who were not privy to the initial transferee's wrongdoing and holds accountable only those who actively engaged in that wrongdoing or simply looked the other way.

Furthermore, at the Hearing, the Davis Defendants raised the concern that Trustee's reading of the statute would create an endless chain of transferees such that, for example, if the Davis Defendants spent any of the money transferred to them at Wal-Mart, Trustee could seek recovery from Wal-Mart as a mediate transferee. This scenario, however unlikely, is deterred by, and at the very least remedied by, the complete defense in § 550(b). It is unlikely that a trustee would bring an action against a transferee that almost certainly has a good faith defense and even if a trustee did, the transferee could assert the defense and exit the litigation promptly.

Lastly, while the Court does not need to go beyond the plain language of the statute, it is important to note that limiting immediate and mediate transferees to only those who exercised dominion and control over the actual property transferred, and not extending it to those who only exercised dominion and control over the value of that property, creates perverse incentives. Initial transferees, particularly those who are insolvent, would be incentivized to liquidate or convert the property transferred and then transfer the proceeds to another party so as to make them unrecoverable. Transferees would have less of an incentive to "investigate [the] dodginess" of the transfer before accepting it.[245] Transferees could take with knowledge of the voidability of the transfer, in bad faith, or without providing value, and escape unscathed with property properly belonging to a debtor. These incentives do not square with the Bankruptcy Code's policy of maximizing the estate for all creditors.[246]

---

[245] Markell, *supra* note 114, at 10.

[246] *See In re Moody Nat'l SHS Houston H, LLC*, 426 B.R. 667, 675 (Bankr. S.D. Tex. 2010) ("At its most fundamental level, a business bankruptcy case is designed to maximize the returns to creditors holding claims

This Court finds that considering the plain language of § 550 and the statute taken as a whole, it extends to transferees like the Defendants, who allegedly received the value of the transferred property directly from the initial transferee. Thus, the Defendants are mediate transferees. Taking Trustee's pleadings as true, he has met his pleading burden as to all Defendants.[247]

### g. Whether Trustee pled sufficient facts to satisfy Rule 8(a) as to Defendants Kalil and O'Donnell's status as mediate transferees.

The Pepperwood Defendants argue that Trustee impermissibly bases his allegations that Defendants O'Donnell and Kalil were immediate or mediate transferees of funds (and not the property transferred) from their co-defendant, Pepperwood I, who Trustee alleges is also an immediate or mediate transferee of funds (and not the property transferred), exclusively "upon information and belief."[248] Trustee counters that under Rule 8(a) he need only plead a "short and plain statement" that he is entitled to relief and that by pleading that Kalil and O'Donnell were mediate transferees of the funds transferred to Pepperwood I, he has met that burden.[249] If the Court finds that Trustee's allegation is insufficient, Trustee requests leave to amend.[250]

While in this case, the Court analyzed Trustee's allegations regarding the allegedly fraudulent initial transfer under Rule 9(b), Rule 8(a) applies to allegations that one is an immediate or mediate transferee of an initial transferee under § 550.[251] That is because a trustee need not allege fraud on behalf of an immediate or mediate transferee in order to recover[252] and

---

against the estate, while allowing a debtor to reorganize. Maximizing creditor recoveries may be done with a reorganization of the business or with its liquidation, but it is a fundamental requirement.").
[247] 20-3127, ECF No. 5; 20-3129, ECF No. 6.
[248] 20-3129, ECF No. 6 at 8 (citing *ABC Arbitrage v. Tchuruk*, 291 F.3d 336, 350 n.67 (5th Cir. 2002)).
[249] 20-3129, ECF No. 12 at 16.
[250] *Id.*
[251] *In re Black Elk Energy Offshore Operations, LLC*, 2019 Bankr. LEXIS 2561, at *27 (citing *Picard v. Legacy Capital Ltd. (In re Bernard L. Madoff Inv. Sec. LLC)*, 548 B.R. 13, 35–36 (Bankr. S.D.N.Y. 2016)).
[252] *See* 11 U.S.C. § 550(a).

Rule 9(b)'s heightened pleading standard applies only "[i]n alleging fraud or mistake."[253]  Under Rule 8(a), Trustee need only plead "a short and plain statement of the claim showing that [Trustee] is entitled to relief."[254]  Therefore, this Court must determine whether Trustee's allegation that "[o]n information and belief, after receipt of the monetized funds from the fraudulently transferred Series A Stock, Pepperwood Fund I distributed the funds to Defendants O'Donnell and Kalil[,]" satisfies Rule 8(a).

The Pepperwood Defendants cite *ABC Arbitrage* for the proposition that if Trustee alleges fraud on information and belief, he must also allege the factual basis for his belief.[255] However, *ABC Arbitrage* dealt with the Private Securities Litigation Reform Act, [256] which imposes more stringent pleading requirements.[257] As discussed above, Rule 8(a) applies here and pleadings based on information and belief are typically allowed under the Federal Rules of Civil Procedure.[258]  First, under Rule 8(e), this Court must construe pleadings "so as to do justice."[259] Second, under Rule 11, an attorney's signature on a pleading "certifies that to the best of the [filing] person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further

---

[253] FED. R. CIV. P. 9(b).
[254] *Id.* 8(a).
[255] 20-3129, ECF No. 6 at 25–26 (citing 291 F.3d 336, 350 n.67).
[256] 291 F.3d at 349–50.
[257] *See Ogle v. Comcast Corp. (In re Houston Reg'l Sports Network, L.P.)*, 547 B.R. 717, 744 (Bankr. S.D. Tex. 2016) (noting that the pleading requirements of the Private Securities Litigation Reform Act are more stringent than those of Federal Rule of Civil Procedure 9).
[258] *Johnson v. Johnson*, 385 F.3d 503, 531 n.19 (5th Cir. 2004).
[259] FED. R. CIV. P. 8(e); *see also Rodriguez v. Target Corp.*, 2010 U.S. Dist. LEXIS 153679, at *9 (W.D. Tex. Jan. 4, 2010) (citing *Carroll v. Morrison Hotel Corp.*, 149 F.2d 404, 406 (7th Cir. 1946)).

investigation or discovery."[260]   Thus, allegations may be made on information and belief, particularly where they are based on information that "is more accessible to the defendant."[261]

It is not necessary for this Court to dismiss Trustee's claim as to Defendants Kalil and O'Donnell purely because it is alleged on information and belief.[262]   To determine whether Trustee's allegations against Defendants Kalil and O'Donnell survive dismissal, this Court will consider whether sufficient facts were pled to make Trustee's claim plausible.[263]   In his complaint, Trustee alleges that Kalil and O'Donnell: (1) agreed to help Ray Davis find a buyer for Debtor when Ray Davis was looking for an "exit strategy";[264] (2) formed Pepperwood II as a vehicle to raise money from investors to purchase the Series A Stock from Ray Davis;[265] (3) formed Pepperwood I and entered into an agreement with Ray Davis whereby Pepperwood I would receive about $5 million from the sale of the Series A Stock;[266] and (4) received the funds given to Pepperwood I from the sale of the Series A Stock.[267]   Taking these allegations as true, it is plausible that Defendants Kalil and O'Donnell, based on their alleged participation in the Pepperwood entities and with Ray Davis's contemplated sale of Debtor, received monetized funds from the sale of the Series A Stock.   Thus, the Court denies the Pepperwood Defendants request for dismissal on this ground.[268]

### 3.  Trustee's Second Cause of Action: Imposition of Constructive Trusts as to Racheal Johnson and Nicholas Davis

---

[260] FED. R. CIV. P. 11; *see also Rodriguez*, 2010 U.S. Dist. LEXIS 153679, at *9.

[261] *Johnson*, 385 F.3d at 531 n.19.

[262] *See Katz v. Intel Pharma, LLC*, 2018 U.S. Dist. LEXIS 169029, at *11 (S.D. Tex. Oct. 1, 2018) ("That some of the claims are made on 'information and belief' is not a basis for dismissal.").

[263] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

[264] 20-3129, ECF No. 1 at 4.

[265] *Id.* at 6.

[266] *Id.* at 2–3.

[267] *Id.* at 7.

[268] 20-3129, ECF No. 6.

Imposition of a constructive trust is a state law remedy intended "to prevent unjust enrichment resulting from an unconscionable act."[269]   Under Texas law, imposition of a constructive trust requires a claimant to prove: (1) breach of a fiduciary relationship or, in the alternative, actual fraud, (2) unjust enrichment of the wrongdoer, and (3) tracing of the property to an identifiable res.[270]   Imposition of a constructive trust is solely within the discretion of this Court.[271]

Trustee requests that this Court impose a constructive trust against the homes of Racheal Davis and Nicholas Davis to the extent those homes were purchased with funds received from Ray Davis following the sale of the Series A Stock.[272]   Trustee further requests the Court determine that the homes are property of the bankruptcy estate so that it may be liquidated for the benefit of Debtor's creditors.[273]   Racheal Johnson and Nicholas Davis argue that because there is no basis against them for fraudulent transfer, as illustrated by their arguments outlined above, Trustee's request for the imposition of constructive trust on the homes of Racheal Johnson and Nicholas Davis should be dismissed.[274]

As discussed *supra*, Trustee pled with particularity that the transfer of the Series A Stock from Debtor to Ray Davis was fraudulent, thereby satisfying the first element for the imposition of a constructive trust.  Trustee also detailed the amounts and dates of transfers allegedly made from Ray Davis to Racheal Johnson and Nicholas Davis from the monetized funds he received after the sale of the Series A Stock[275] and further alleged that the Defendants used those funds to purchase

---

[269] *Haber Oil Co. v. Swinehart (In re Haber Oil Co.)*, 12 F.3d 426, 436 (5th Cir. 1994) (citing *Ellisor v. Ellisor*, 630 S.W.2d 746, 748 (Tex. App.—Houston [1st Dist.] 1982, no writ)).
[270] *Id.* at 437.
[271] *GE Commer., Inc. v. Wright & Wright, Inc.*, 2009 U.S. Dist. LEXIS 121472, at *32 (N.D. Tex. Dec. 31, 2009) (citing *Schneider v. Schneider*, 5 S.W.3d 925, 929 (Tex. App.—Austin 1999, no pet.)).
[272] 20-3127, ECF No. 1 at 12.
[273] *Id.*
[274] 20-3127, ECF No. 5 at 7.
[275] 20-3127, ECF No. 1 at 6–7.

real property.[276]  Taken as true, these facts indicate that the real property purchases are traceable to the allegedly fraudulent stock transfer.  Lastly, Trustee alleges that those transfers were gifts to Racheal Johnson and Nicholas Davis for which no consideration was received,[277] making it plausible that the Defendants were unjustly enriched.  Therefore, this Court denies Davis Defendants' Motion as to Count 2 of Trustee's complaint.[278]

### 4. Trustee's Third Cause of Action: Avoidance of Transfers to Charles Davis Pursuant to Texas Business & Commerce Code Sections 24.005(a)(2) and 24.006(a)

In Count 3, Trustee argues that pursuant to 11 U.S.C. § 544(b), he may avoid certain transfers totaling $591,322.68 from Debtor directly to Charles Davis.  Section 544(b)(1) requires the transfer be voidable under applicable state law; here, that law is TUFTA sections 24.005(a)(2) and 24.006(a).  Trustee alleges that in 2013 when Ray Davis began experiencing significant health issues, Charles Davis became more integrated into the business, and even when Charles Davis did not have an explicit job title, it was clear that he was working at the direction of Ray Davis.[279]  Ultimately, Charles Davis was promoted to the position of Executive Vice President of Debtor and given primary responsibility over investor relations.[280]  Trustee further alleges that Charles Davis was paid an annual compensation of approximately $158,000 in 2014 and for the first four months of 2015, but at the same time that Ray Davis caused Debtor to issue the Series A Stocks to himself, he also locked Charles Davis into a new employment agreement so that he would be taken care of if and when the company was sold; Charles Davis's salary was increased to $220,000.[281]

---

[276] *Id.* at 12.
[277] *Id.* at 12.
[278] 20-3127, ECF No. 5.
[279] 20-3127, ECF No. 1 at 10.
[280] *Id.*
[281] *Id.*

Trustee contends that Charles Davis also received a commission for soliciting investments from investors and that between 2013 and 2015, Charles Davis was paid $877,528.50, including more than $480,000 in 2015, as commissions through his company RooSoftware. Trustee alleges that those payments were made by Debtor to Drew Davis, Charles Davis's cousin, and then paid to Charles Davis via RooSoftware.[282] Despite receiving a salary and a sales commission, and unrelated to issuance of the Series A Stock from Debtor to Ray Davis, Charles Davis, according to Trustee, also received the following distributions directly from Debtor:

| Date | Amount |
|------|--------|
| December 1, 2014 | $100,000.00 |
| June 17, 2015 | $191,322.68 |
| September 17, 2015 | $300,000.00 |
| **TOTAL** | $591,322.68[283] |

This Court will next address Defendant Charles Davis's arguments in the Davis Defendants' Motion to Dismiss and Trustee's response.

a. **Whether constructive fraud was adequately pled pursuant to Texas Business & Commerce Code Sections 24.005(a)(2) and 24.006(a).**

Under TUFTA, the first three elements of actual fraud (section 24.005(a)(1)), and constructive fraud (sections 24.005(a)(2) and 24.006(a)), are the same.[284] Those elements are: "(1) a creditor; (2) a debtor; (3) the debtor transferred assets shortly before or after the creditor's claim arose."[285] The statutes differ, however, as to intent. Under section 24.005(a)(1), a claimant must plead fraudulent intent.[286] On the other hand, under sections 24.005(a)(2) and 24.006(a), a claimant must "plead facts demonstrating: (1) a lack of reasonably equivalent value for the

---

[282] *Id.*
[283] *Id.* at 11.
[284] *Life Partners Creditors' Trust v. Cowley (In re Life Partners Holdings, Inc.)*, 926 F.3d 103, 120 (5th Cir. 2019).
[285] *Id.*
[286] *Id.*

transfer; and (2) that the transferor was 'financially vulnerable' or insolvent at the time of the

transaction"[287]  Section 24.005(a)(2) provides:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a
> creditor, whether the creditor's claim arose before or within a reasonable time
> after the transfer was made or the obligation was incurred, if the debtor made the
> transfer or incurred the obligation:
> . . .
>> (2) without receiving a reasonably equivalent value in exchange for the
>> transfer or obligation, and the debtor:
>>> (A) was engaged or was about to engage in a business or a
>>> transaction for which the remaining assets of the debtor were
>>> unreasonably small in relation to the business or transaction; or
>>> (B) intended to incur, or believed or reasonably should have
>>> believed that the debtor would incur, debts beyond the debtor's
>>> ability to pay as they became due.

Section 24.006(a) provides:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor
> whose claim arose before the transfer was made or the obligation was incurred if
> the debtor made the transfer or incurred the obligation without receiving a
> reasonably equivalent value in exchange for the transfer or obligation and the
> debtor was insolvent at that time or the debtor became insolvent as a result of the
> transfer or obligation.

> (b) A transfer made by a debtor is fraudulent as to a creditor whose claim arose
> before the transfer was made if the transfer was made to an insider for an
> antecedent debt, the debtor was insolvent at that time, and the insider had
> reasonable cause to believe that the debtor was insolvent.

Defendant Charles Davis argues that Count 3 of Trustee's complaint should be dismissed

because Trustee fails to  properly allege the elements required to establish a claim under the

relevant provisions of TUFTA.[288]  Trustee, Charles Davis contends, recited the statute, but failed

to provide the Court with any facts related to its elements, particularly as to section

24.005(a)(2)(A).[289] Charles Davis argues that Trustee does not allege the nature of the business

---

[287] *Id.*
[288] 20-3127, ECF No. 5 at 8.
[289] *Id.*

or transaction Debtor was engaged in or about to engage in, as required.[290]   If Trustee had

knowledge and belief of alleged facts, as he pleaded, Charles Davis argues that Trustee was

obligated to detail those facts.[291]   Furthermore, he contends, Trustee did not allege which creditor

had a claim before or within a reasonable time after the transfer was made as required by both

sections 24.005(a)(2) and 24.006(a).[292]   Trustee counters that he was merely required to meet the

Rule 8(a) standard, particularly regarding Debtor's financial situation.[293]

The Fifth Circuit has yet to decide whether to impose the Rule 9(b) pleading standard on

constructive fraud claims.[294]   And while some district courts in the Fifth Circuit have determined

that constructive fraud claims need only meet the Rule 8(a) standard, this Court will nevertheless

determine whether Trustee's claim meets the heightened standard.[295]

Trustee made conclusory allegations in the Count 3 section of his complaint,[296] but

provided sufficient factual allegations elsewhere therein to meet the Rule 9(b) standard.   First,

Trustee listed the dates and amounts of the transfers from Debtor to Charles Davis and alleged

that these were in addition to the salary increase Charles Davis received under a 2015

employment agreement and his commissions for soliciting investments.   This evidence, Trustee

alleges, proves Debtor did not receive equivalent value for the $591,322.68 in transfers.[297]

Trustee also asserts that these transfers were made at a time when Debtor was struggling to meet

payroll and on the verge of failing,[298] when Ray Davis was looking for an "exit strategy" due to

---

[290] *Id.* at 8.
[291] *Id.*
[292] *Id.* at 8–9.
[293] 20-3127, ECF No. 12 at 17.
[294] *In re Life Partners Holdings, Inc.*, 926 F.3d at 120 (declining to decide whether Rule 9(b) applies to claims of constructive fraud because plaintiff's pleadings satisfied both the Rule 8(a) standard and the Rule 9(b) standard).
[295] *See id.*
[296] 20-3127, ECF No. 1 at 12–13.
[297] *Id.* at 11.
[298] *Id.*

the financial condition of Debtor and his failing health,[299] and as a way to make sure Charles

Davis was "taken care of," in case Debtor was sold.[300]   Therefore, Trustee provided the who,

what, when, where, how, and why of the alleged fraud.[301]   These allegations also satisfy the

"lack of reasonably equivalent value" and "financially vulnerable" prongs of Trustee's

constructive fraud claims.   Second, in addition to alleging "on information and belief" that

Debtor "was engaged in, or was about to engage in, a business or transaction for which its

remaining assets were unreasonably small," Trustee alleges that Debtor was transferring large

sums of money to Charles Davis (a transaction),[302] in addition to the salary and commissions he

was already being paid while Debtor was financially vulnerable, evidenced by Debtor owing

millions of dollars to investors on promissory notes, struggling to provide a return to investors

because it lacked a commercially viable product, and having difficulty meeting payroll

(unreasonably small assets remaining).[303]   These allegations, if proven, satisfy section

24.005(a)(2)(A).

Lastly, as discussed thoroughly in III.C.1., Trustee's complaint did not sufficiently plead

that a creditor exists who would have standing to bring suit under TUFTA sections 24.005(a)(2)

and 24.006(a) into whose shoes Trustee could step.   Section 24.005(a)(2) requires Trustee to

plead that there is a creditor with an allowable claim that arose *before or within a reasonable*

*time* of the allegedly fraudulent transfer.   Section 24.006(a) requires Trustee to plead that there is

a creditor with an allowable claim that arose solely *before* the fraudulent transfer.   Therefore,

Trustee must amend his pleadings to establish standing.   As this Court previously held, Trustee's

---

[299] *Id.* at 4, 10.

[300] *Id.* at 10.

[301] *See, e.g.*, *Williams*, 112 F.3d at 177 (quoting *Tuchman*, 14 F.3d at1068); *Melder*, 27 F.3d at 1100 n.5; *In re Think3, Inc.*, 529 B.R. at198 ("In substance, [pleading with particularity under Rule 9(b)] means that a party alleging fraud should specify the 'who, what, when, where, and how' of the alleged fraud.") (citing *Benchmark Elec. Inc.*, 343 F.3d at 724).

[302] 20-3127, ECF No. 1 at 11.

[303] *Id.* at 4, 9, 11–12.

request for leave to amend is granted.[304]

### E.  The Pepperwood Defendants' Motion for a More Definite Statement

The Pepperwood Defendants request that in the event this Court denies their Motion to Dismiss, the Court order the Trustee to address the alleged infirmities by a proper repleading.[305]

Like a motion to dismiss under Rule 12(b)(6), "a motion for a more definite statement is generally disfavored."[306]  Federal Rule of Civil Procedure 12(e), as incorporated by Federal Rule of Bankruptcy Procedure 7012, states, "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."[307]  Under Rule 12(e), this Court must consider "whether the complaint is such that a party cannot reasonably be required to frame a responsive pleading."[308]  That is because a motion for a more definite statement "is used to provide a remedy only for an unintelligible pleading rather than a correction for lack of detail."[309]  The "complaint does not contain sufficient information to allow a responsive pleading"[310] if the responsive party is "unable to determine how to frame a response" and "cannot respond, even with a simple denial, in good faith, or without prejudice to himself."[311]  In its 12(e) motion, a party must "point out the defects complained of and the details desired."[312]

---

[304] 20-3127, ECF No. 6; 20-3129, ECF No. 12.

[305] 20-3129, ECF No. 6 at 28.

[306] *Davenport v. Rodriguez*, 147 F. Supp.2d 630, 639 (S.D. Tex. 2001) (quoting *Frazier v. Southeastern Pennsylvania Transp. Auth.*, 868 F. Supp. 757, 763 (E.D. Pa. 1994)).

[307] Fed. R. Civ. P. 12(e).

[308] *Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d 126, 130 (5th Cir. 1959).

[309] *Davenport v. Rodriguez*, 147 F. Supp. 2d at 639 (citation omitted).

[310] *Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999).

[311] *Neveu*, 392 F. Supp. 2d at 1169 (quoting *Cellars v. Pac. Coast Packaging, Inc.*, 189 F.R.D. 575, 578 (N.D. Cal. 1999)).

[312] Fed. R. Civ. P. 12(e).

Conversely, the motion should be denied "where the complaint is specific enough to apprise the defendant of the substance of the claim being asserted."[313]   In other words, if the complaint conforms to the notice pleading requirements of Rule 8(a), then the motion should be denied.[314]   Rule 12(e)'s purpose is not to stifle the liberality of Rule 8(a) "by requiring a plaintiff to amend his complaint which under [the pleading rules] is sufficient to withstand a motion to dismiss."[315]   Thus, courts must tread lightly when considering whether to require a more definite statement pursuant to Rule 12(e) so as not to construe it in "a manner [that] unduly expand[s] pleadings."[316]   Rule 12(e) must be construed in light of Rule 8(a) because such allows "[t]he rules of practice . . . to be understood in their entirety and not as detached and isolated units."[317]

A Rule 12(e) motion cannot be used to subvert the discovery process.  It "is not to be used to assist in getting the facts in preparation for trial."[318]   Those facts must be gleaned through the appropriate discovery methods.[319]   Therefore, "[i]f the detail sought by a motion for more definite statement is obtainable through discovery, the motion should be denied."[320] Determining whether to grant a motion for a more definite statement necessarily involves the discretion of the Court;[321]   "[a]s [the trial judge] presides over the continuous process of

---

[313] *Id.* (citing *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1461 (C.D. Cal. 1996)).

[314] *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("If a pleading fails to specify the allegations in a manner that provides notice, a defendant can move for a more definite statement . . . ."); *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 163 (1984) (stating that a motion for more definite statement is proper when a complaint does not "serve the purposes of modern-day notice pleading.").

[315] *Mitchell*, 269 F.2d at 132.

[316] *Smith v. Spohn (In re IFS Fin. Corp.)*, 2009 Bankr. LEXIS 4073, *5 (Bankr. S.D. Tex. 2009) (quoting *Bellavance v. Frank Morrow Co.*, 2 F.R.D. 9, 11 (D.R.I. 1941) (citation omitted).  *Accord Neveau*, 392 F. Supp. 2d at 1169 (constructing Rule 12(e) liberally so as to be consistent with Rule 8(a)(2)); *United States by Clark v. Ga. Power Co.*, 301 F. Supp. 538, 544 (N.D. Ga. 1969) ("Rule 12(e) is not designed to frustrate the concept of notice pleading."); *Agric. Lands, Inc. v. Panhandle & S.F.R. Co.*, 60 F. Supp. 108, 110 (W.D. Mo. 1945) ("Rule 12 . . . should not be construed to repeal Rule 8.").

[317] *Spohn*, 2009 Bankr. LEXIS at *6 (quoting *Mitchell v. Brown*, 2 F.R.D. 325, 328 (D. Neb. 1942)).

[318] *Mitchell*, 269 F.2d at 132.

[319] *Id.*

[320] *Spohn*, 2009 Bankr. LEXIS at *6–*7 (quoting *U.S. v. Sequel Contractors, Inc.*, 402 F. Supp. 1142, 1147 (C.D. Cal. 2005)) (citations omitted).

[321] *Mitchell*, 269 F.2d at 130 (contrasting the trial court's role in evaluating Rule 12(b) and 12(e) motions).  *See also Old Time Enters. v. Int'l Coffee Corp.*, 862 F.2d 1213, 1217 (5th Cir. 1989) (reviewing Rule 12(e) order under an

adjudication from commencement of the litigation through pleadings, pretrial discovery, trial, submission and decision," he uses "sound and considered discretion" to grant or deny the motion.[322]

This Court denies the motion because Rule 12(e) is intended for complaints that are unintelligible, not complaints that merely lack detail.[323]  As discussed, Trustee met his pleading burden under Rule 8(a), and Rule 9(b).  Moreover, even where Trustee alleges facts "on information and belief" there are enough facts elsewhere in his complaint to render it plausible that Trustee has a plausible claim against the Pepperwood Defendants upon which relief could be granted.  Thus, there is no basis on which this Court can grant the Pepperwood Defendant's motion for a more definite statement and such request is denied.[324]

## IV.   CONCLUSION

An order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED 10/22/2020.

_Eduardo V. Rodriguez_
Eduardo V. Rodriguez
United States Bankruptcy Judge

---

abuse of discretion standard).  *Accord Kuenzell v. United States*, 20 F.R.D. 96, 98 (N.D. Cal. 1957) (stating that it is within the Court's discretion to determine on a case-by-case basis, whether a motion for more definite statement should be granted).

[322] *Mitchell*, 269 F.2d at 130.

[323] *Davenport*, 147 F. Supp. 2d at 639 (citations omitted).

[324] 20-3129, ECF No. 6.